CITY OF ST. LOUIS, Appellant, v. CHRISTIAN BROTHERS COLLEGE et al.

In Banc, April 13, 1914.

1. **CHANGING BOULEVARD INTO STREET:** Consent of Abutting Owners: No Actual Construction. The provisions of the charter of the city of St. Louis which requires the written consent of the persons owning two-thirds of the land fronting on a boulevard before the ordinance declaring it to be a boulevard can be repealed by another changing it into a street,

St. Louis v. Christian Brothers College.

refers to boulevards which have an actual physical existence. Where nothing has been done under the ordinance declaring a certain street to be a boulevard and directing the city counselor to cause same to be established, changed and widened as a boulevard, no attempt to widen it having been made, and no houses or sidewalks built with reference to its prescribed lines, it is not a boulevard in fact, and no consent of the abutting property owners is required as a precedent condition to its valid repeal.

2. **INTENT OF LAWMAKERS: Limiting Meanings of Words Used.** In arriving at the intent of the lawmaker it is permissible to either expand or limit the meaning of his words, when that becomes necessary to make the law harmonize with reason.

3. **CHANGING BOULEVARD INTO STREET:** *Contractual* **Relation with Abutting Owner.** In the absence of any evidence that the owner of land abutting on the street which the ordinance declared was changed into a boulevard and was to be widened, has accepted the ordinance and expended money in improving his property in harmony with its prescriptions as to building lines and sidewalks, no contractual relations exist between him and the city. There must be an acceptance of its provisions by some expenditure of money to create such a relation. Where the ordinance prohibited the erection of structures on private property nearer than fifteen feet of the boulevard's lines, the mere refraining from erecting any structures within that line for two years after the ordinance was enacted does not establish such contractual relations.

4. ————: ————: **Condemnation Ordinance: Encumbrance.** Whether or not the enactment of an ordinance requiring a street to be widened creates an encumbrance upon the abutting land to be taken for such public purpose before any suit or other proceeding is instituted to effect such condemnation, the repeal of the ordinance does not violate a contract between the city and the owner of such abutting land or invade any of his constitutional rights, for the repeal of the ordinance removes such a cloud or encumbrance if one is created by it.

Appeal from St. Louis City Circuit Court.—*Hon. C. C. Allen*, Judge.

REVERSED AND REMANDED.

*William B. Baird* and *E. E. Pearcy* for appellant.

(1) The passage of the ordinance authorizing the city counselor to cause Kingshighway to be established

St. Louis v. Christian Brothers College.

as a boulevard, is not a condemnation of the property described in the ordinance. Mining Co. v. City of Joplin, 124 Mo. 138; City v. Hill, 116 Mo. 527; St. Louis v. Dorr, 145 Mo. 485; 3 Dillon on Municipal Corporations (5 Ed.), p. 1640, sec. 1036; 2 Lewis on Eminent Domain (3 Ed.), p. 911, sec. 505, and p. 913, sec. 506; Secs. 1 and 2, art. 6, Charter of St. Louis. (2) Whatever the English rule may be, the well established American rule is that no contractual relation is established by the mere passage of an ordinance authorizing the condemnation of property by a municipal corporation for public use and that the proceeding may be dismissed before the property is condemned and paid for. Kansas City v. Railroad, 189 Mo. 245; Simpson v. Kansas City, 111 Mo. 242; Brewing Assn. v. St. Louis, 168 Mo. 44; Real Estate Co. v. St. Louis, 170 Mo. 31; Eyssell v. St. Louis, 168 Mo. 607; District of Columbia v. Hess, 35 App. D. C. 38; 28 L. R. A. (N. S.) 91 and note; Nixon v. Marr, 190 Fed. 915; 2 Lewis on Eminent Domain (3 Ed.), p. 1669-83, secs. 954-955; Charter of St. Louis, art. 6, secs. 1, 2, 9 and 10; 3 Dillon on Municipal Corporations (5 Ed.), p. 1651, sec. 1044, and note 1; Art. 2, sec. 21, Constitution; Sec. 9762, R. S. 1909. (3) As the boulevard authorized to be established by the ordinance had not been established by law, the provision of the charter requiring the consent in writing of the owners of at least two-thirds in frontage thereon did not apply. Charter of St. Louis, art. 6, secs. 1 to 11; Authorities cited above.

*W. B. & Ford W. Thompson* for respondent W. B. Thompson.

(1) Ordinance No. 22946 was a partial performance of a contract made with the taxpayers of St. Louis to establish, open, and construct Kingshighway boulevard, which contract is both express and implied:

(a)   Under section 1 of article 6 of the amendment to the charter of the city of St. Louis authorizing the construction of boulevards.   (b)  Under section 12 of article 10 of the amendment to the Constitution of the State adopted at an election held November 4, 1902, authorizing the issuance of additional bonds by St. Louis.  (c)  By the terms and provisions of paragraph 1 of section 26 of article 3 of the charter, as amended on June 12, 1903, providing for the issuance of negotiable bonds within the limits prescribed by the above amendment of the Constitution of the State.   (d) By the provisions of sections 6350-6354, R. S. 1899, and the amendments thereto.   (e) Under the provisions of Ordinance No. 22,366, entitled, "An ordinance authorizing the issue of bonds of the city of St. Louis, not exceeding, in aggregate, $11,200,000 in the respective amounts and for the respective purposes herein specifically stated, upon two-thirds of the voters of the city of St. Louis voting thereon and assenting thereto, and the holding of an election for the purpose of submitting said proposition to the voters," approved April 3, 1906, and in pursuance of the election held by the voters of the city on June 12, 1906, in which nine separate propositions for increasing the indebtedness of said city, as set forth in said ordinance were ratified by more than two-thirds of the qualified voters of the city.   (f)   By the provisions of Ordinance No. 22,674, declaring the result of a special election called by Ordinance No. 22,366, held on June 12, 1906, and directing the issue of the bonds of the city of St. Louis in the sum of $11,200,000, as authorized by the vote at said election.   (g)   By the construction placed upon all of these acts by the State and by the city of St. Louis, in the case of Haeussler v. St. Louis, 205 Mo. 656.   (h) By the assessment of taxes by the city of St. Louis to pay the interest on said bonds.   (2) The ordinance in terms provides for the establishment, opening and construction of said Kingshighway boule-

vard, in accordance with section 1 of article 6 of the charter of the city of St. Louis, in this (a) By its name; (b) by its boundaries; (c) by its construction; (d) by its restrictions as to structures to be erected thereon, together with its restrictions of its building lines; (e) by the exclusion of any business house; (f) by the penalties for any violation of the provisions of the ordinance; (g) it gives authority to the city counselor to proceed for condemnation in any manner authorized by law. (3) The repealing ordinance is by its terms in violation of the provisions of section 1 of article 6 of the charter, because: (a) Section 1 is an attempt to repeal the boulevard ordinance, without complying with the provisions of section 1 of article 6 of the charter. (b) Section 2, on its face, shows that Kings-highway boulevard, from Easton avenue to Penrose street, was established, and that said section recites that it is an effort to change a boulevard that was established into a street. (c) Section 3 is an attempt to define the lines of a public highway that was already established as a boulevard, but does not refer to any public highway that existed before the adoption of the boulevard ordinance. (d) Section 4 is simply a provision authorizing the city counselor to cause Kings-highway street to be opened according to law. (4) It appears affirmatively by the recitals of the Ordinance No. 22,946, known as the "Boulevard Ordinance," that the highway was already established between Easton avenue and Penrose street, and that such highway was changed by that ordinance into a boulevard, in compliance with section 1 of article 6 of the charter, and that Ordinance No. 24,220 did not, by repealing Ordinance No. 22,946, affect in any manner the highway that was already established before the passage of the boulevard ordinance: (a) because said ordinance on its face does nothing but repeal the boulevard ordinance; (b) it establishes a highway and does

not in any manner attempt to change the former highway that existed before the adoption of the boulevard ordinance, and does not create a new highway. (c) If it does anything, it creates another highway where one is already established, without repealing the ordinance creating the first highway. (5) Section 1 of article 6 of the charter provides a right to the property holder to insist upon the assessment of damages for the repeal of the ordinance, and which, if denied, is a breach of the provisions of the charter, and entitles him to damages in the manner provided for in the charter: (a) for the loss of the boulevard; (b) for the delay of the city in proceeding with the boulevard; (c) for the loss of the use of his property before the repeal of the ordinance; (d) for the damages resulting from the restrictions of building on his property; (e) for the damages for the taking of his property up to the building lines; (f) for the procedure of condemnation by the city to ascertain the damage. (6). The right created in section 1 of article 6 of the charter in favor of abutting property whenever a boulevard ordinance is repealed, is. analogous to the situation of a vendor and vendee of property as established in the English rule on this subject, where public authorities have announced their intention to take private property for public use. 3 Dillon (5 Ed.), sec. 1014, note 1, on page 1652; King v. Market Commrs., 1 B. & Ad. 335; King v. Market Commrs., Id., 327-332, l. c.; Stone v. Railroad, 4 M. &. C. 124; Towney v. Railroad, 16 L. J. (N. S.) Eq. 282; Walker v. Eastern Counties Co., 6 Hare, 594; Haynes v. Eastern Counties Co., 1 Drew & S. M. 426; In re Park Commrs., 56 N. Y. 148. (7) In every decision in this State construing the power of cities to exercise the right of eminent domain in opening streets, the general rule is that the project may be abandoned and the proceedings discontinued at any time before vested rights in others have attached. Such general rule does not ap-

ply where there is an express legislative enactment limiting the city's power to abandon. Charter of St. Louis, art. 6, secs. 4, 5, 8, 9, 11, 14; Nixon v. Marr, 190 Fed. 913; 3 Dillon (5 Ed.), sec. 1044; 2 Lewis on Eminent Domain (3 Ed.), secs. 954-955, pp. 1669, 1683; Kansas City v. Railroad, 189 Mo. 258; D. C. v. Hess, 35 App. D. C. 38, 28 L. R. A. (N. S.) 91. (8) It is an elemental rule of law that all grants by the government must be strictly construed. This is especially true of the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other. 1 Lewis on Eminent Domain (3 Ed.), sec. 388; Belcher v. St. Louis Grain Co., 82 Mo. 121; Railroad v. Davis, 197 Mo. 669; Cox v. Tifton, 18 Mo. App. 430; Chandler v. Reading, 129 Mo. App. 63; Note in Woerner's Revised Code, p. 386. And courts cannot dispense with the forms and conditions prescribed by law, on the notion that they are not essential. The very fact that they are prescribed makes them matters of substance. 1 Lewis on Eminent Domain, 397. And "if there remains a doubt as to the extent of the power, after all reasonable intendment in its favor, the doubt should be received adversely to the claim of power." 1 Lewis on Eminent Domain, sec. 388; Parker v. Adams, 55 N. J. L. 334.

*Eliot, Chaplin, Blayney & Bedal* for respondent Hydraulic Press Brick Co.

BROWN, J.—Action to widen street. From a judgment for defendants plaintiff appeals.

In the city of St. Louis there has existed for many years a thoroughfare extending from Easton avenue to Penrose street, known as "Kingshighway Boulevard," which is not a boulevard in fact, but a street. Said street probably traverses other parts of said city, but that fact is not pertinent to the issues before us.

On March 27, 1907, the legislative department of St. Louis enacted, in due form, an ordinance having for its purpose the making of a real boulevard out of said Kingshighway Boulevard.    This ordinance will hereafter be referred to in our opinion as the boulevard ordinance.  Its purposes are quite fully indicated in the first and last sections thereof, which read as follows:

"Section One.  The present Kingshighway boulevard from Easton avenue to Penrose street in the city of St. Louis, Missouri, is hereby changed into a boulevard to be known as 'Kingshighway.'

"Section Seven.  The city counselor is hereby authorized and instructed to cause said 'Kingshighway' to be established, changed and widened as a boulevard according to law."

Other sections of the ordinance prescribe that the proposed boulevard shall be 150 feet wide, with sidewalks, driveways and parkways planted to shrubbery and trees, together with certain restrictions as to the character of travel upon said proposed boulevard.  To secure a width of 150 feet it would have been necessary to condemn additional land fronting on said street.

Said ordinance also contains the following section regarding the construction of buildings near the proposed boulevard and the removal of other buildings:

"No structure of any kind whatever shall hereafter be erected on private property fronting upon said 'Kingshighway' between Easton avenue and Natural Bridge Road, nearer than fifteen feet from the respective east and west lines of said boulevard, and all existing structures of any kind whatsoever upon the private property fronting upon or adjacent to said 'Kingshighway' between the east and west lines of said highway and lines fifteen feet from and parallel to the said east and west lines, respectively, shall be removed therefrom."

No buildings were in fact removed as contemplated by the last quoted section of the ordinance, nor were any structures erected within fifteen feet of the proposed boulevard.

This boulevard ordinance continued in force nearly two years, during which time nothing was done by the city to convert the aforesaid street into a boulevard. No action was instituted by the city to condemn the additional lands called for, nor did the owners of said lands convey the same to the city or spend any money towards the construction of the proposed boulevard.

On March 17, 1909, a new ordinance was enacted by the city, which, in addition to repealing the boulevard ordinance, directed the widening and improvement of Kingshighway as a street between Easton avenue and Penrose street.

This last mentioned ordinance will hereafter be designated as the repealing ordinance, and it was under its provisions that the plaintiff city instituted the present action to condemn lands of defendants for the purpose of widening Kingshighway as a street.

It is conceded that the repealing ordinance was enacted in exact conformity with the charter of St. Louis, except that the persons owning two-thirds of the property fronting on the proposed boulevard did not consent in writing to such repeal.

The appellant contends that no such consent was necessary to repeal the boulevard ordinance, because nothing had been done towards carrying said ordinance into effect.

Two of the defendants filed answers asserting that such consent of the property-owners was necessary to a repeal of the boulevard ordinance; that the enactment of the boulevard ordinance in 1907 increased the value of their property, and that its repeal, without the consent of the property owners, violated sundry provisions of the State and Federal constitutions.

The learned trial court sustained the contention of defendants, and gave judgment in their favor, dismissing the plaintiff's petition, from which it prosecutes this appeal.

I.   The charter of St. Louis provides for the establishment of boulevards, the cost of which shall be taxed against the lands fronting thereon.

The provisions of said charter pertaining to the abandonment or discontinuance of boulevards read as follows:

"The Municipal Assembly may at any time repeal any ordinance establishing or opening a boulevard, or changing an existing street into a boulevard, and thereupon such boulevard shall be and become a street in all respects like other streets of the city, and the property abutting thereon shall be relieved from the restrictions imposed by such ordinance; provided, however, that such an ordinance shall not be repealed without the consent in writing of the owners of at least two-thirds in frontage of all the property fronting on such boulevard, nor unless such repeal shall be recommended by the board of public improvements; and, provided further, that the procedure provided in this article for the establishing and opening of boulevards shall be pursued for the ascertainment and payment of damages and benefits resulting from such repeal; except that no compensation shall be allowed or paid to any person consenting to the repeal of such an ordinance." [Sec. 1, art. 6, Charter of St. Louis.]

*Repeal of Ordinance.*

It is apparent that in the letter of the charter provisions above quoted there is strong support for the contention of defendants, but plaintiff asserts that to construe this charter according to its letter would be to nullify its spirit. That, in order to give the charter a construction in harmony with the intent of its framers, we should hold that the assent in writing of prop-

erty owners to the repeal of a boulevard ordinance
is only necessary after a boulevard has actually been
established by the construction of driveways, side-
walks, parkways, etc.

Section 1 of the boulevard ordinance enacted in
1907 declares in express terms that Kingshighway "is
hereby changed into a boulevard;" but it would con-
travene the law of physics to say that a mere legisla-
tive enactment speaks into actual existence a boule-
vard, the contsruction which we judicially know always
requires the expenditure of money and labor. The
Municipal Assembly, however, recognized this axio-
matic truth, for, in the 7th section of the same ordi-
nance, it directed the city counselor "to cause said
Kingshighway to be *established, changed* and widened
as a boulevard according to law." This last quoted
section may be considered a confession on the part of
the city's lawmakers of a lack of that omnipotent
power to consummate such physical changes in a street
as defendants assert were effected *eo instanti* by the
enactment of the boulevard ordinance.

Defendants, in seeking to support their conten-
tion by section 1 of the boulevard ordinance (before
quoted) seem to overlook the vital difference between
words and acts. The physical acts of taking posses-
sion of a street and adjacent lands, constructing side-
walks, driveways, parkways, etc., are what create a
boulevard. The mere enactment of the boulevard or-
dinance fell short of establishing such a highway.

Defendants are not supposed to have expended
any money in securing the enactment of the boulevard
ordinance. Therefore, no reason is apparent why the
charter-framers should grant the property owners the
power to obstruct its repeal before the contemplated
boulevard was actually constructed, or work done or
money expended thereon. On the other hand, if we
concede the contention of plaintiff that the quoted pro-
visions of the charter were only intended to apply in

cases where boulevards have been constructed, a reason will at once appear. The granting of a right-of-way for such boulevard; the payment of special taxes or other outlays to construct driveways, sidewalks, parkways, and the removal of houses or other structures which may have been built on or too near the boulevard, will give the adjacent property-owners equities in the boulevard itself which might be swept away by changing the constructed boulevard into a street.

Our holding will be that the quoted charter provision which requires the consent of the persons owning two-thirds of the lands fronting on a boulevard before such boulevard may be changed into a street, refers to boulevards that have an actual physical existence. This construction limits the words of the charter relating to repeal, but we think the limitation is in accord with reason and justice. On this point we will say that, in construing laws, it is permissible in arriving at the intent of the lawmaker to either expand or limit the meaning of his words, when it becomes necessary to make the law harmonize with reason. [Kane v. Railroad, 112 Mo. 34, l. c. 39; Keeney v. McVoy, 206 Mo. 42, l. c. 68.]

The rule of reason is quite firmly rooted in the jurisprudence of our State, and can be traced back to the early case of Fanny v. State, 6 Mo. 122, l. c. 142. In the case of State ex rel. v. Railroad, 105 Mo. App. 213, SMITH, J., in speaking for the Kansas City Court of Appeals, said: "The reason of the law should prevail over its letter, and general terms should be limited in their application so as not to lead to injustice, oppression or an absurd consequence, the presumption being that the Legislature intended no such anomalous results." To the same effect are the cases of Verdin v. City of St. Louis, 131 Mo. 26; State ex rel. v. Turner, 141 Mo. App. 323; State ex inf. v. Talty, 166 Mo. 529, l. c. 560; and Westerman v. Supreme Lodge of K. P., 196 Mo. 670.

II.  Two of the defendants, in their arguments and briefs, have cited numerous authorities to establish the alleged fact that by the very passage of the boulevard ordinance in 1907, the city has established contractual relations with the owners of land fronting on Kingshighway, which contractual relations cannot be abrogated by the city without the consent of the persons owning lots fronting on said street.

**Constitution not Violated.**

We are unable to see how any such contractual relations came into existence in the absence of evidence that defendants have accepted the boulevard ordinance of 1907 and expended money in carrying its provisions into effect.

Laws are sometimes enacted which establish contractual relations between a city or the State and one or more of its citizens, but such laws usually require specific acceptance, or an expenditure of money or labor by the party, or parties, for whose benefit they are enacted.  In a general sense, no contractual relations spring up between a city and its citizens simply because its citizens obey a law which the city has enacted.  These views find support in Judge Cooley's work on Constitutional Limitations (7 Ed.), p. 402. The most that defendants claim to have done under the boulevard ordinance of 1907 is that they refrained from erecting any structures within fifteen feet of the proposed boulevard.  They did not move any houses or expend any money in obeying said ordinance, and, therefore, they did not obtain any vested rights under it.

If a citizen obey a law and find that its enactment and enforcement has proven beneficial to him, he may not, solely for that reason, say to the lawmaker: "That law has helped me and you cannot repeal it without my consent."

A large part of the brief filed by defendants' able counsel tends to support the proposition that a city, or

other corporation, has no moral or equitable right to abandon a condemnation proceeding once begun. On this point we will only say that we find nothing in defendants' answer which may properly be classed as an equitable defense. In some of the cases cited the rule is announced that the enactment of a law requiring the land of an individual to be condemned for public purposes creates an encumbrance upon such land before any suit or other proceeding is instituted to affect such condemnation. [Cavenaugh v. McLaughlin, 38 Minn. 83; Foster v. Scott, 136 N. Y. 577; Graybill v. Ruhl, 225 Pa. St. 417.]

Conceding that the law is correctly announced in the above quoted cases, we are unable to understand how they help the defendants in any respect. If the enactment of the boulevard ordinance in 1907 cast a cloud, encumbrance or restriction upon the lands of defendants, is it logical to say that the removal of such cloud, encumbrance or restriction by the repeal of the boulevard ordinance violated a contract or invaded defendants' constitutional rights? The placing of a burden on an individual or his property does sometimes invade his constitutional rights, but lifting that same burden from his shoulders cannot have any such effect. Therefore, we hold that on the admitted facts there is no constitutional question in this case.

In their briefs the parties to this action have referred to the issuance of bonds by the plaintiff city to defray the expenses of constructing boulevards. Also to the conversion of other parts of Kingshighway into a real boulevard. No such facts are found in the pleadings or evidence upon which the judgment below is based, and we decline to consider them here.

Being convinced that the trial court erred in holding that the boulevard ordinance enacted in 1907 had not been repealed, and in dismissing the action, we reverse its judgment and remand the cause to be further proceeded with in harmony with the views herein

expressed. *Lamm, C. J., Woodson, Graves* and *Walker, JJ.,* concur; *Faris* and *Bond, JJ.,* dissent.