STATE ET AL., EX REL. AND TO USE OF DRAINAGE DIST. NO. 8 OF PEMISCOT COUNTY, APPELLANTS, v. MCKAY ET AL., RESPONDENTS. —52 S. W. (2d) 229.

Springfield Court of Appeals. June 22, 1932.

*Sharon J. Pate* and *Von Mayes* for appellant.

*Charles Claflin Allen, Jr., Gallivan & Finch, Ward & Reeves* and *C. G. Shepard* for respondents.

COX, P. J.—Action by Drainage District No. 8 of Pemiscot county upon bond of defendant, McKay, County Treasurer of Pemiscot county and Treasurer for the drainage district to recover back certain costs that accrued in the sale of certain lands in District No. 8 under judgments foreclosing the lien of the district for delinquent taxes due the district and which had been paid by the treasurer out of the sinking fund of said district upon warrants issued therefor. The facts were fully pleaded in the petition, answer and reply. The defendants then moved for judgment on the pleadings which motion the court sustained and rendered judgment for defendants. Plaintiff appealed.

The pleadings showed that at the sale the district became the purchaser at a bid which did not exceed the amount necessary to satisfy the judgment as the statute now provides it may do. [Section 11020, Revised Statutes 1929.] The exact amount of the bid is not stated but no question is raised as to that. It is insisted by appellant that the district could not pay costs that accrued in the foreclosure suit out of funds held by it in the sinking fund for the redemption of bonds of the district and since the warrants issued to pay these costs show upon their face that they were issued upon that fund for the purpose of paying costs, their illegality was apparent upon their face and for that reason the treasurer could not legally pay them and when he did pay them he became liable upon his bond to the district for the amount paid. Questions of estoppel and the effect of a final settlement by the treasurer with the county court are raised but in the view we take of this case, it will not be necessary to pass upon those questions.

The statute, section 11020, Revised Statutes 1929, under authority of which the district purchased the land provides as follows: "Drainage or levee districts heretofore or hereafter incorporated under any of the drainage or levee laws of this State where lands are offered for sale for their own taxes or assessments due thereon, shall be and are hereby authorized to buy such lands at not to exceed the amount of such taxes, assessments, interest, penalties and costs. . . ."

This is followed by other provisions not material here. The last clause of the section contains a proviso as follows: "Provided, however, that no district shall have power to make any expenditures or disbursements of any kind or character under the provisions of this article out of any maintenance fund of such district." The authority of the district to pay the costs involved in this action depends upon the construction to be given this statute. Before passing directly to that question we shall call attention to a rule of construction that appears to us to be applicable here, to-wit: "A statute or ordinance will not be given a construction which will make it unreasonable or which will result in an absurdity." In Stack v. Banking Company, 283 Mo. 396, 223 S. W. 89, quotations from a number of cases in our Supreme Court are given which sustain that rule, a few of which are as follows:

In Lumber Co. v. R. R., 216 Mo. 658, 672, 116 S. W. 530, it is said that the court is often required to "look less at the letter or words of the statute than at the context or subject matter, the consequences and effects and the reason and spirit of the law in endeavoring to arrive at the will of the lawgiver."

In Keeney v. McVoy, 206 Mo. 42, 68, 103 S. W. 496, it is said: "The letter of the statute may be enlarged or restrained according to the true intent of the framers of the law."

In Gist v. Construction Company, 224 Mo. 369, 379, 123 S. W. 921: "It is a fundamental principle that laws . . . are presumed passed in a spirit of justice and for the welfare of the community. It follows they should be so interpreted, if possible, as to further that purpose."

In St. Louis v. Christian Bros. College, 257 Mo. 541, 552, 165 S. W. 1057, it was held, "It is permissible in arriving at the intent of the law maker to either expand or limit the meaning of his words when it becomes necessary to make the law harmonize with reason."

In Johnston v. Ragan, 265 Mo. 420, 435, 178 S. W. 159, it is said: "Statutes are not to be construed so as to result in an absurdity or to impose unnecessary burdens."

Under this rule, we are constrained to hold that the Legislature, when it enacted what is now section 11020, Revised Statutes 1929, providing that drainage or levee districts should be authorized to buy land sold for their own taxes intended thereby to authorize the district to buy the land for its own protection and the protection of its bondholders if it saw fit to do so, and by limiting the amount which the district might bid at the sale to the amount necessary to pay the amount then due and interest and costs, it meant that if the district became the purchaser, it should pay the costs to the parties to whom the fees and compensation were due. These costs

must be paid out of funds held for the redemption of bonds and not out of the maintenance fund of the district for the same section forbids payment out of that fund. The only other fund from which costs could be paid is the sinking fund. It is for the benefit of that fund that the taxes are levied and the land sold when these taxes become delinquent. In the very nature of things if the costs are to be paid at all when the district buys the land, they should be paid from the fund for the benefit of which the land was·sold.

To our mind it would be absurd to say that the Legislature intended by the enactment of this statute to grant authority to the district to buy land sold for taxes but at the same time refuse authority to pay for it when bought. Authority to buy for its own good necessarily includes authority and fixes the obligation to pay the purchase price. It would not, of course, be necessary for the district to pay to the officer selling the land that part of the purchase price coming to it, but it would be the duty of the district to pay to the officer, if he should demand it at the time of the sale, all of the amount bid by it except the part which, if paid, it would be the duty of the officer to immediately return to the district.

Under the general law an officer selling land under execution may refuse to make a deed to the purchaser until the amount of the bid is paid to him and we see no reason why the same rule, except as above stated, should not apply when lands are sold to pay taxes and costs under a judgment obtained by a drainage district foreclosing its lien for taxes. In all judicial sales the first thing to be paid from the proceeds of the sale is the costs and if there be any remainder, it is applied on the judgment debt.

That it was the intention of the Legislature that costs and expenses should be paid out of the proceeds of sale is made manifest also by other provisions of the law. Section 10828, Revised Statutes 1929, provides that ''All drainage taxes provided for in this article, including maintenance taxes together with all penalties for default in payment of the same, *all costs in collecting the same,* including a reasonable attorney's fee to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from the date of levying of the same by the county court as provided herein until paid constitute a lien, . . . upon all the land assessed and shall be collected in the same manner as said county and school taxes upon real éstate are collected. . . .'' (Italics are ours.) By this provision the lien covers costs as well as the taxes and is a part of what is to be collected in the same way as liens for said county and school taxes are collected. It is clear that upon a sale of land for State, county or school taxes at public sale by an officer of the law, the first thing to be paid out of the proceeds of the sale is the costs. If

the same principle is to be followed in collecting drainage district taxes, then undoubtedly it would be the duty of the officer to collect the bid, except the part payable to the bidder, and out of the amount so received, pay the costs.

In this case the district paid the costs direct to the parties entitled thereto instead of paying it to the officer who made the sale but that could make no difference in the result. The district merely paid what it was legally obligated to pay and it was received by the parties entitled thereto.

Our conclusion is that the drainage district was acting within its rights in making the payments in question in this case and for that reason no liability existed against defendants and the plaintiff cannot recover.

Judgment affirmed. *Bailey* and *Smith, JJ.,* concur.