EARL B. BOWERS v. MISSOURI MUTUAL ASSOCIATION, Appellant, a Corporation.—62 S. W. (2d) 1058.

Division Two, August 12, 1933.

*O. J. Page, Lee F. Kinder* and *Argus Cox* for appellant.

*Haymes & Dickey* for respondent.

498

COOLEY, C.—Suit brought by the beneficiary upon a contract of insurance issued by the defendant, a domestic corporation. Plaintiff recovered judgment for the face of the policy or certificate, $1000, and $20 interest, a total of $1020. Defendant appealed to the Springfield Court of Appeals. That court affirmed the judgment in an opinion reported in 52 S. W. (2d) 599, but deeming its opinion in conflict with that of the St. Louis Court of Appeals in Reed v. Missouri Mutual Association, 5 S. W. (2d) 675, certified the case to this court.

It seems to be conceded that defendant corporation was organized under the provisions of the law relative to insurance on the assessment plan, now Article 3, Chapter 37, Sections 5745 et seq., Revised Statutes 1929 (6 Mo. Stat. Ann. p. 4398 et seq.). Plaintiff, however, contends that his petition pleads a cause of action as upon an old line insurance policy and that defendant's answer pleads no facts bringing it within the law governing insurance on the assessment plan. The answer does not plead facts bringing defendant company or the policy in question within the law referred to. But

defendant contends and the Court of Appeals held that plaintiff in his petition pleaded a contract of insurance on the assessment plan. Plaintiff in his brief here asserts that the controlling question on this appeal and one that must be determined is whether or not certain sections of the statute, to be hereinafter noted, apply to domestic corporations issuing insurance on the assessment plan. As will presently appear, that could be true only if the contract in question is one for insurance on the assessment plan. If it is an old line insurance policy there can be no question as to the applicability of the statutes above referred to. Plaintiff's petition refers to the policy or certificate issued to the insured, the written application · therefor and the articles of agreement and by-laws of defendant as constituting the contract. Without burdening this opinion by setting out the pleadings and said instruments therein referred to, we shall for the purposes of this case treat the contract in question as a contract of insurance on the assessment plan, and for convenience shall refer to the certificate issued to the insured as the policy.

At the time the application was signed, March 1, 1928, and when the policy was issued, March 3, 1928, the insured, Marietta Bowers, and the plaintiff, named as beneficiary in the application and policy, were wife and husband. She had sued him for divorce and the suit was then pending. A divorce was granted some time after issuance of the policy, the exact time not appearing. The application was made by plaintiff for and on behalf of his wife, he signing her name thereto. The chief controversy in the case arises out of defendant's contention made in its answer and supported by its evidence, that the condition of the applicant's health was misrepresented in the application. In 1926 she had been afflicted with cancer of the left breast and in November of that year had submitted to a surgical operation therefor. For a time thereafter it was thought that operation had removed all of the cancerous tissue and that she was cured. The surgeon who performed the operation and treated her thereafter testified that for fifteen or eighteen months after the operation it "looked as though she might be well." Plaintiff's testimony was to the effect that when the policy was issued she was in fairly good health and that he believed she had been cured. The evidence showed, however, that in fact the disease recurred and that she had another operation for it in September, 1928. The proof on both sides shows that she died of cancer of the left breast and shoulder in August, 1929. Defendant's evidence tends to show that she was probably not free from the disease at any time after the first operation.

In the application the following statement appears: "3. I hereby warrant and agree that I am now of sound body, mind and health, and free from disease or injury. . . . .5. (Q.) Have you any of the following diseases: . . . Cancer? (A.) No."

500

The defendant did not at or before the trial nor at any time deposit in court for the benefit of plaintiff nor offer to return the premiums or assessments which concededly had been paid regularly on the policy. Such further reference to the facts as may be necessary will be made in the course of this opinion.

■ I. Section 5732, Revised Statutes 1929 (6 Mo. Stat. Ann. p. 4373), provides that no misrepresentation made in obtaining a policy of insurance on the life of a citizen of this State shall be deemed material, or render the policy void, unless the matter misrepresented shall have contributed to the contingency or event on which the policy is to become payable and whether it so contributed shall be a question for the jury. Section 5735 provides:

"In suits brought upon life policies, heretofore or hereafter issued, no defense based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies."

Defendant in this case raises a question as to whether the plaintiff had an insurable interest in the life of his wife, to which we will advert later. But as forecast above, the question first demanding solution is whether Section 5735, supra, applies. If it does the defendant cannot assert the defense of misrepresentation as to the health of the insured, which is substantially its only defense except want of insurable interest, and alleged errors of the trial court in the admission and rejection of evidence bearing on the question of misrepresentation as well as alleged errors in the instructions on that issue become immaterial because defendant was not entitled to make that defense.

Sections 5732 and 5735, supra, and another section, 5740, Revised Statutes 1929, relative to suicide as a defense, are found in Article 2, Chapter 37, Revised Statutes 1929, dealing generally with life and accident insurance. They have all been upon our statute books for many years and during all of the time to which we shall have occasion to refer. Prior to 1887 there was no statute providing specifically for contracts of insurance on the assessment plan. In that year the Legislature enacted such law, which with some subsequent amendments is now Article 3 of Chapter 37. It was carried into the Revision of 1889 as Article III of Chapter 89, relating to insurance. Section 10 of the original act, Section 5869, Revised Statutes 1889, reads:

"Every corporation doing business under this article shall annually, on or before the first day of February, return to the superintendent of the insurance department, in such manner and form as he shall prescribe, a statement of its affairs for the year ending on the preceding 31st day of December, and the said superintendent,

in person or by deputy, shall have the power of visitation of and examination into the affairs of any such corporation which are conferred upon him in the case of life insurance companies by the laws of this State; and all such foreign companies are hereby declared to be subject to and required to conform to the provisions of Section 5912 of the Revised Statutes of Missouri, 1889: *Provided always,* that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth. [Laws 1887, p. 199.]''

Section 5912, Revised Statutes 1889, referred to in said Section 5869, is the statutory provision requiring foreign insurance companies doing business in the State to appoint the Superintendent of Insurance to acknowledge or receive service of process in actions against them. For convenience we may refer to it as the service statute. The corresponding section of the present statute is Section 5894, Revised Statutes 1929.

The statute of 1887, governing assessment insurance, remained unchanged until 1897, when the Legislature repealed said Section 5869, Revised Statutes 1889 (Sec. 10 of the original act) and enacted a new section in lieu thereof. (We shall call attention later to the title of the Act of 1897.) The only change made in the statute as re-enacted was in the clause immediately following the semicolon. In Section 5869, Revised Statutes 1889, that clause had read, ''and all such foreign companies are hereby declared to be subject to and required to conform to the provisions of Section 5912 of the Revised Statutes of Missouri, 1889.'' As re-enacted it was made to read, ''and all such foreign companies are hereby declared to be subject to, and required to conform to the provisions of Sections 5855, 5912, 5849 and 5850 of the Revised Statutes of Missouri of 1889, and governed and controlled by all the provisions in said sections contained.'' As thus re-enacted said section has been carried forward in successive revisions of the statute, unchanged except for the numbers of the sections referred to so as to correspond to the section numbering in the respective revisions. Section 5754, Revised Statutes 1929, reads:

''Every corporation doing business under this article shall annually, on or before the first day of February, return to the superintendent of the insurance department, in such manner and form as he shall prescribe, a statement of its affairs for the year ending on the preceding thirty-first day of December, and the said superintendent, in person or by deputy, shall have the power of visitation of and examination into the affairs of any such corporation, which are conferred upon him in the case of life insurance companies by the laws of this State; and all such foreign companies are hereby declared to be subject to, and required to conform to the provisions of

Sections 5732, 5735, 5740 and 5894, Revised Statutes 1929, and governed and controlled by all the provisions in said sections contained: *Provided, always,* that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth and provided. [R. S. 1919, sec. 6164.]"

Sections 5732, 5735, 5740 and 5894, Revised Statutes 1929, are, respectively, the misrepresentation statute, Section 5849, Revised Statutes 1889, the return of premiums statute, Section 5850, Revised Statutes 1889, the suicide statute, Section 5855, Revised Statutes 1889, and the service statute, Section 5912, Revised Statutes 1889. The question as to the proper construction of said Section 5754, Revised Statutes 1929, arises from the use of the words "all such foreign companies" in the clause following the semicolon. Did the Legislature intend, by retaining that language of the original act, to exempt domestic assessment insurance companies from the operation of the statutory provisions relative to suicide, misrepresentation and return of premiums, expressly made applicable to foreign companies doing business and issuing the same kind of policies in this State? Appellant says yea, contending that the statute must be literally construed and that such construction necessitates that conclusion. Respondent, contra, contends that by fair and reasonable construction, seeking the lawmakers' intent from the whole act and the evident purpose thereof, the statute makes domestic as well as foreign companies subject to the suicide, misrepresentation and return of premiums statutes. We agree with respondent.

We do not find that the precise question indicated has been heretofore decided by this court. There are expressions in some cases indicating that the court thought the Act of 1897 was intended to make *all* assessment insurance companies subject to the misrepresentation, suicide and return of premiums statutes. For example, in Toomey v. Supreme Lodge Knights of Pythias, 147 Mo. 129, 48 S. W. 936, the court in discussing former rulings holding such companies exempt from the suicide statute under the 1887 act, said, 147 Mo. l. c. 137:

"Whether this discrepancy was designed or was an oversight by the General Assembly, it is not the province of the courts to say, but it appears it was a mistake, for in 1897 the Legislature extended the law to all classes of insurance. [Acts 1897, p. 129.]"

In Logan v. Fidelity & Casualty Co., 146 Mo. 114, 123, 47 S. W. 948, the court said that the suicide statute established a general rule "applicable to any company whose contracts insure against death, and which attempts to avoid liability in case of suicide, except those companies doing business on the assessment plan that were expressly exempted by reason of the provisions of Section 5869, Revised Statutes 1889, of the act authorizing such companies to be organized and

prosecute business in this State, and the force of that provision in favor of the assessment companies has been stricken down by an act of the Legislature in 1897, so that the defense of suicide now is alike unavailing to all companies issuing policies upon the life of a citizen in this State, whether they be called life, accident or assessment insurance companies."

. In Elliott v. Des Moines Life Ins. Co., 163 Mo. 132, 157, 63 S. W. 400, the court said that the Act of 1897 brought "assessment companies" within the provisions of the general insurance laws concerning suicides. But in the above cases the point now before us was not in issue and the court was not deciding whether or not the Act of 1897 put foreign and domestic assessment companies on the same footing with regard to being subject to the suicide, misrepresentation and return of premiums statutes. The same is true of Collins v. German-Amer. Mut. L. Assn., 84 Mo. App. 555, wherein the St. Louis Court of Appeals said, l. c. 556, that by the Act of 1897 "the Legislature of this State amended Section 5869 of the revision of 1889, so as to subject all corporations insuring on the assessment plan—home or foreign—to certain provisions of the revision applicable to ordinary life insurance business. One of these provisions is as follows: . . ." Quotation of the return of premiums statute follows. The statement that the Act of 1897 subjected both foreign and domestic companies to the return of premiums statute (and others therein referred to) is positive but not authoritative because *obiter*. In that case the defendant was a foreign corporation and the question whether the Act of 1897 applied in like manner to domestic companies was not involved. Such expressions so used cannot be treated as judicial interpretations of the statute in question for the reasons indicated, though they indicate the impressions of the writers concerning it. Decisions construing the Act of 1887 or based upon policies governed by that act throw no light on the question because that act clearly exempted all assessment companies from the operation of the suicide, misrepresentation and return of premiums statutes.

In but two cases prior to the decision by the Springfield Court of Appeals in the instant case do we find that the question under consideration has been decided, viz., Reed v. Missouri Mutual Assn., supra, by the St. Louis Court of Appeals, and Anderson v. Missouri Benefit Assn., 198 Mo. App. 97, 199 S. W. 740, by the Kansas City Court of Appeals. In both the defendant was a domestic assessment insurance corporation. In the Reed case the court held, without discussion, that the defendant could make the defense of fraudulent misrepresentation as to health without having returned or tendered the premiums or assessments it had collected, citing Wilson v. Brotherhood of American Yeomen (Mo. App.), 237 S. W. 212; same case, 297 Mo. 655, 249 S. W. 650; and State ex rel. National

504

Council, etc., v. Trimble, 292 Mo. 371, 239 S. W. 467. The cases cited involved insurance issued by fraternal beneficiary associations which by statute are exempt from the misrepresentation and return of premiums statutes and do not constitute authority for the holding in the Reed case. The court failed to note its own prior, though *obiter*, statement in Collins v. German Amer. Mut. L. Assn., supra, that by the Act of 1897 the return of premiums statute was made applicable to all assessment companies, home or foreign, and failed also to note the Anderson case.

In the Anderson case the insured had committed suicide and that fact was urged as a defense. The court held that since the Act of 1897 the provisions of the general insurance law relative to suicide was applicable to domestic as well as foreign assessment companies. The same reasoning and the same conclusion of course would apply to the misrepresentation and return of premiums statutes. The court referred to the exemption of assessment companies from said provisions of the general insurance law prior to 1897 and to the change then made in the law. Discussing the contention made in that case as in this, that the change in the law subjected only foreign assessment companies to the provisions of the general insurance law referred to the court well said:

"Why the Legislature would desire to make such a discrimination between domestic and foreign insurance companies is beyond any explanation. We know of no reason why the Legislature should apply the burden of the suicide clause to foreign companies and exempt domestic companies from the same. Such would be a discrimination which cannot be supposed in the absence of clear expression on the part of the Legislature to the contrary. [See Goodson v. National Masonic Accident Association, 91 Mo. App. 350.]

"Ever since the Amendment of 1897, or for more than twenty years, the bench and bar of this State have accepted Section 6959, Revised Statutes 1909, in its reference to Sections 6945, 7042, 6937, and 6940 of the general insurance laws, as covering both foreign and domestic companies. [See Collins v. Mut. Life Association, 84 Mo. App. l. c. 556.; Logan v. Fidelity & Casualty Co., 146 Mo. l. c. 123, 47 S. W. 948; Toomey v. Supreme Lodge, 147 Mo. l. c. 137, 48 S. W. 936; Elliott v. Ins. Co., 163 Mo. l. c. 157, 63 S. W. 400.]" [199 S. W. 741.]

In the instant case the Springfield Court of Appeals approved the reasoning and conclusion of the Anderson case.

Not only would the construction contended for by appellant make a discrimination for which no good reason can be seen between domestic assessment companies and foreign companies licensed to do and doing the same kind of business in the State, but it would work a corresponding discrimination between their respective policyholders and beneficiaries, citizens of the State. The preferential exemption

given the domestic company would be a disadvantage to the beneficiary in a policy issued by it who might be compelled to sue on the contract, as compared to the beneficiary in a policy issued by the foreign company, as is well illustrated by the defense tendered in the Anderson case and in the instant case.

■ In the Act of 1887 foreign assessment companies were made subject to the service statute. There was no necessity or reason for making domestic companies subject to that provision, as service of process upon them could be obtained under other provisions of the law. In repealing and re-enacting Section 5869, Revised Statutes 1889, in 1897, the Legislature doubtless recognized the propriety and necessity of continuing the provision making foreign companies subject to the service statute and for that purpose retained the old wording "foreign companies." It may be also that, as suggested in the Anderson case, the legislative purpose was to make clear that domestic companies were not to be subject to the service statute. That section, as re-enacted and now appearing in the statute book, is not as clearly worded as it might be. But all of its provisions must be considered as well as its evident purpose and its proper construction gathered from the whole, giving due effect to all parts thereof. Where certain terms of a statute are ambiguous we are at liberty to go to the title of the act as a clue or guide to the intention of the Legislature. [Straughan v. Meyers, 268 Mo. 580, 588, 187 S. W. 1159; State ex rel. Bixby v. City of St. Louis, 241 Mo. 231, 248, 145 S. W. 801.] Laws are passed in a spirit of justice and for the public welfare and should be so interpreted if possible as to further those ends and avoid giving them an unreasonable effect. [Gist v. Rackliff-Gibson Constr. Co., 224 Mo. 369, 384, 123 S. W. 921.] In arriving at the legislative intent doubtful words of a statute may be enlarged or restricted in their meaning to conform to the intent of the lawmakers, when manifested by the aid of sound principles of interpretation. [Straughan v. Meyers, 268 Mo. 1. c. 588, 187 S. W. 1159; City of St. Louis v. Christian Brothers College, 257 Mo. 541, 552, 165 S. W. 1057; State to Use, etc., v. Heman, 70 Mo. 441, 451.] And it has been said that "while we have no right to construe a law by our view of its expediency, we can take that feature into consideration in attempting to ascertain what was in the legislative mind." [State ex rel. Asotsky v. Regan, 317 Mo. 1216, 1224, 298 S. W. 747, 749.]

The title of the Act of 1897, repealing and re-enacting Section 5869, Revised Statutes 1889, reads:

"AN ACT to repeal section 5869 of Article 3 of chapter 89 of the Revised Statutes of Missouri of 1889, entitled 'Insurance companies on the assessment plan,' and to enact a new section in lieu thereof, to be known and designated as section 5869 of article 3, chapter 89 of the Revised Statutes of Missouri of 1889, relating to statement

506

of affairs of assessment insurance companies and misrepresentations made in securing a policy of insurance, and defense thereon, for such misrepresentations.

The title does not indicate an intent to limit the provisions relative to misrepresentations in securing a policy and defense thereon to foreign assessment companies any more than an intent so to limit the provision relative to statement of affairs. Rather the language indicates an intent to make the act apply to all assessment companies alike. The first part of the section requiring annual statements and providing for examination and visitation by the superintendent of insurance clearly covers both foreign and domestic companies. It begins: "Every corporation doing business under this article," etc. In the proviso, if it may be properly so called, similar language is used—"nothing herein contained shall subject *any corporation doing business under this article* to any *other* provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth and provided." (Italics ours.) We think it unnecessary to consider whether or not the last clause of the section is a proviso in the strict legal sense. It is not necessarily so because introduced by the word "provided." That word may be used in a conjunctive sense. [See Castilo v. State Highway Commission, 312 Mo. 244, 279 S. W. 673.] In that clause there is a clear implication that all corporations doing business under said article of the statute are subject to the provisions of the general insurance laws mentioned in the section. In Coonce v. Munday, 3 Mo. 373, 375, it is said: "It is a rule that that which is clearly implied by a statute, is as much a part of the statute as if the same were expressed in words."

In that case it was held that a provision that no execution should issue from the circuit clerk's office on a transcript of the judgment of a justice of the peace until one had been issued by the justice implied that it could then issue. [See, also, State ex rel. McCaffery v. Mason, 155 Mo. 486, 500, 55 S. W. 636; State ex rel. Johnston v. Caulfield, 245 Mo. 676, 697, 150 S. W. 1047.]

We agree with the conclusion reached by the Kansas City Court of Appeals in the Anderson case and hold that under the statute, Section 5754, Revised Statutes 1929, domestic as well as foreign assessment insurance companies are subject to and required to conform to the provisions of the general insurance laws above mentioned, now embodied in Sections 5732, 5735 and 5740, Revised Statutes 1929. Reed v. Missouri Mutual Assn., supra, so far as it holds the contrary, is overruled.

II. As to insurable interest. Section 5751 provides that: "No corporation doing business under this article (Art. 3 of Chap. 37) shall issue a certificate or policy . . . upon any life in

which the beneficiary named has no insurable interest. . . ."
The policy in this case was upon the life of Marietta Bowers. The
beneficiary named therein was the plaintiff, then her husband. Did
he have an insurable interest in her life when the policy was issued?
Defendant argues that he did not because she had sued him for
divorce, was not then living with him as his wife and that it is ap-
parent from the allegations of her reply to his answer in the divorce
case that they would never again live together as husband and wife.
The reply was introduced in evidence. It charges gross indignities on
the part of Bowers against his wife such as, if true, might well have
deterred her from a reconciliation. But she was still his wife and
who can say that the chance of reconciliation was irrevocably gone?
Women have forgiven much to errant husbands, especially where
there are minor children to consider. In this case there was a son
who lived with the mother. It is apparently assumed by the parties
and there is some evidence from which it may be inferred that the
son was a minor. Plaintiff's evidence tends to show that, though not
living with his wife when the policy was issued, he was visiting and
communicating with her frequently and supporting her and their
son. For the welfare of his son, if for no other reason, it was to
plaintiff's interest that the life of that son's mother should continue.
It is not contended that ordinarily a husband has no insurable in-
terest in the life of his wife. We are not willing to hold, merely
upon the showing made here of a pending divorce suit in which the
wife makes grave charges against the husband, that the filing and
pendency of such suit *ipso facto* destroys the husband's insurable
interest in his wife's life, especially when, as here, she is also the
mother of his minor child. The plaintiff had an insurable interest
in the life of the insured when the policy was issued.

Defendant complains of the action of the court in striking
out certain parts of its answer. The answer pleaded "that at the
time of the issuance of the certificate of insurance herein on the life
of Marietta Bowers *and at the time of her death,* the beneficiary in
said certificate had no insurable interest therein; and that no rela-
tionship such as is required by law and the by-laws of said associa-
tion existed between the insured and the beneficiary; and that the
beneficiary had no pecuniary interest in the life of the said Marietta
Bowers." (Italics ours.) On motion of plaintiff the court struck
out of the answer the words we have italicized. The above quoted
portion of the answer is all that is said therein concerning lack of
insurable interest. The statute says that a policy shall not *be issued*
upon any life in which the beneficiary named has no insurable in-
terest. It says nothing about the cessation of the insurance if such
insurable interest existed when the policy was issued but has ceased
to exist when the death of the insured occurs. Appellant has not set
out all of its by-laws in its abstract. In the portions set out and in

the application and policy nothing is said about who may be insured or named as beneficiaries or to the effect that the insurance shall terminate if the beneficiary shall, after issuance of the policy, cease to have an insurable interest in the life of the insured. The policy on its face promises to pay the amount stipulated upon the death of the insured to ''Earl B. Bowers, whose address is Springfield, Missouri, if living, if not then to the guardian, executor or administrator of said applicant (the insured) for the sole benefit of legal heirs,'' provided the insured shall have paid all assessments due and complied with the contract on her part. The general rule is that ''a policy of life insurance, or a designation of beneficiary, valid in its inception, remains so, although the insurable interest, or relationship of the beneficiary, has ceased, unless it is otherwise stipulated in the contract.'' [1 Bacon on Benefit Societies and Life Insurance, (3 Ed.) sec. 253, p. 595.] To same effect; 2 Joyce on Insurance, secs. 817 and 902; 37 C. J. p. 397, sec. 68c; 14 R. C. L. p. 907, sec. 84; Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, 461; McKee v. Phoenix Ins. Co., 28 Mo. 383, 386; Blum v. New York Life Ins. Co., 197 Mo. 513, 525, 95 S. W. 317. [See, also, notes to Rose v. Brotherhood of Locomotive Fireman & Engineers, 52 A. L. R. 381, 389, 423.] Under the pleadings and proof in this case we think that rule applies. We hold that the contract in question was valid in its inception and remained so notwithstanding the subsequent divorce. The pleadings did not show that plaintiff and the insured had been divorced prior to Mrs. Bower's death or that a divorce suit had been filed and was pending when the policy was issued. Defendant in its answer pleaded the alleged misrepresentations made in procuring the policy but pleaded no facts tending to show that the contract of insurance, if valid in its inception, had thereafter ceased to be so. Moreover, since the divorce subsequent to the issuance of the policy did not destroy its validity the above quoted words stricken from the answer could have constituted no defense had the fact of the divorce been pleaded. The court did not err in striking out that part of the answer.

Appellant also urges that the court erred in striking out an allegation in its answer that the plaintiff, in signing Mrs. Bowers' name to the application was ''acting for and on behalf of himself and without the knowledge or consent of the insured.'' Defendant objected and excepted at the time to the court's ruling striking out said portion of the answer but such objection and exception were not preserved or called to the court's attention in its motion for new trial. That ruling therefore is not before us for review.

In view of our holding that defendant was not entitled to make the defense of misrepresentation it is needless to discuss assignments of error relating to the admission and rejection of evidence and to

the instructions. Upon the record presented the judgment for plaintiff is right and it is affirmed. *Westhues* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.