STATE OF MISSOURI EX REL. CHARLES M. HAY, CLAXTON E. ALLEN, HAROLD T. JOLLEY ET AL., ELECTION COMMISSIONERS WITHIN AND FOR THE CITY OF ST. LOUIS, MISSOURI, RELATORS, v. WILLIAM B. FLYNN, JUDGE OF THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, RESPONDENTS.—147 S. W. (2d) 210.

St. Louis Court of Appeals. Opinion filed Feb. 4, 1941.

*Frank P. Aschemeyer* and *Sylvan Agatstein* for respondent.

*Roscoe Anderson, Isaac C. Orr, Fred Eppenberger* and *Carroll Don-ohue* for relators.

ANDERSON, J.—This is an original proceeding on *certiorari* wherein relator is seeking to have quashed the record of the Circuit Court of the City of St. Louis, in a cause entitled "In the Matter of Mrs. Lee Fleckenstein," numbered 2999 Miscellaneous. Relators are the election commissioners within and for the City of St. Louis, Missouri, and respondent is the duly elected, qualified, and acting Judge of the Circuit Court of the City of St. Louis, before whom said cause was tried. The record sought to be quashed is an appeal by Mrs. Fleckenstein from the action of relators, acting in their official capacity, denying an application made by her on October 28, 1940, to register as a qualified voter for the election of November 5, 1940. The Circuit Court found in her favor and entered its order directing relators to forthwith take such steps as were necessary to enable Mrs. Fleckenstein to vote on November 5, 1940, in Ward 22, Precinct 1, of said City of St. Louis. A motion for new trial was filed by relators on November 1, 1940, which motion was by the court overruled. Thereupon a petition for *certiorari* was filed in this court, which was thereafter sustained, and our writ duly issued.

There is no contention in this court by relators that Mrs. Fleckenstein did not possess the qualifications necessary to register and vote at said election if she had presented herself for registration in due season, but relators say that since her request was made on October 28, 1940, less than fifteen days preceding the November 5th election, they had no power or authority to permit her to register for said election, and that the Circuit Court had no jurisdiction to enter its order compelling them to place her name upon the registration books. A determination of the issue presented involves a construction of the applicable registration laws, Laws 1937, pages 235, 278.

. *Section 15* of said Act provides:

"Registration for any election shall be closed at five o'clock P. M. on the 15th day preceding the election except Municipal elections when it shall close forty (40) days prior to April election, and no voter shall be thereafter registered prior to said election, except by order of the Circuit Court. No voter who is duly registered in compliance with the provisions of this act shall be required to register again so long

as he continues to reside at the address from which he is registered, unless his registration be cancelled as provided for in this Act.''

*Section 27* of said Act provides:

"In all cases where any person is denied registration who makes application to register within the time fixed by this Act, or whose name has been striken (stricken) from the register by the Board, an appeal shall be allowed to the Circuit Court. No formal pleading shall be required, but it shall be sufficient for such person to present to the Court an application verified by affidavit and showing service thereof on the Board, setting out that he has been denied the right to register by said Board, or that his name has been stricken from the register, and the date of same, as the case may be, and such other information showing his qualifications as a voter in the precinct in which he claims a right to register. Said application shall first be presented ''to the Board which shall thereupon acknowledge service thereof in writing. Provided further that said appeal to the Circuit Court must be taken within three days after said person has been denied registration or his name stricken from the register by the Board. The Court shall hear said application forthwith. Evidence may be introduced for and against said application. Each case shall be disposed of forthwith and the Clerk of said Court shall enter upon his records the disposition of said application. In the event the Court shall sustain said application, the Court shall forthwith notify the Board of its action, and upon the applicant appearing before the Board, the Board shall forthwith cause the applicant to be registered and note the fact that said person was registered by order of the Court. No person who is permitted to register by order of the Circuit Court shall be protected by such order in case he should be challenged, or prosecuted for false registration or false voting. All appeals shall be heard in the Circuit within which such city is located.''

Relator's position is that the provisions of Section 15, *supra,* which require that registration shall be closed fifteen days preceding a general election, and forty days prior to a municipal election, are mandatory, while respondent contends the provisions are merely directory. There is no absolute test by which the question here presented may be resolved, but in passing upon the matter, the prime object is to ascertain the legislative intent from a consideration of the statute as a whole, bearing in mind its object and the consequences that would result from construing it one way or the other. [State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S. W. (2d) 104.] The primary purpose of registration laws is to prevent fraudulent abuse of the franchise, by providing in advance of elections an authentic list of the qualified voters. To guard against fraud, the General Assembly has incorporated a great many provisions in the Act under review, which throw light on the question of the legislative intent here presented.

*Section 19* of the Act provides that immediately after the close of registration before each election preceding which a canvass is required, the board shall prepare verification lists for each precinct, and a canvass shall be made before each general state and county election, each state and county primary and primary city election.

*Section 20* lays down the rules with respect to the canvass. In this canvass the verification lists are used, and the names of persons listed therein and not found to reside at the dwelling place designated therein are checked.

*Section 21* provides for notices to be thereafter sent to the persons named in the lists, whose names have been checked, requiring them to appear before the Board of Election Commissioners upon the Wednesday, Thursday, Friday, or Saturday of the week following the closing of registration to show cause why their names should not be erased from such registry.

*Section 22* provides that upon demand, persons connected with the ownership or management of any lodging house, boarding house, inn, bath house, hotel, or tavern shall, not less than three nor more than five days before every election, file a sworn statement setting forth the name and other information concerning every person residing in his establishment.

*Section 24* provides that no registration shall be cancelled without notifying the voter by mail that he has not been found to reside at his registered address upon investigation and that unless he personally appear and show cause why his resignation should not be cancelled, it will be cancelled. This notice must be given at least three days prior to cancellation.

*Section 26* provides that any person may challenge a registration at any time not later than ten o'clock P. M. of the Tuesday following the close of registration for any election, by filing a written challenge upon a form furnished by the Board. Said section then provides for an investigation by assistants of the board, who shall make a written report of their findings. The Board may thereafter notify the challenged person to appear before it, to show cause why his name should not be stricken, giving at least two days' notice, and said challenge must be determined not later than Thursday of the week preceding any election.

*Section 28* provides that a final list of all registered voters shall be made not later than ten days before each election, and posted in four appropriate places in the precinct.

It cannot be denied that the foregoing provisions furnish a very efficient check against fraudulent voting, and to allow names to be entered upon the registration lists subsequent to the close of registration would be to defeat the purpose which the General Assembly had in view in framing the law, and from a consideration of the entire statute, its nature, its object, and the consequences that would result

if the provisions of Section 15 were construed as directory, and considering the provisions of Section 15 itself, which are mandatory in form, we are of the opinion that the General Assembly intended the provisions of said section, that no voter should be registered after the closing of registration, to be mandatory.

The method pursued by us in ascertaining the legislative intent is in line with that employed in State ex rel. Woodmansee et al. v. Ridge, 343 Mo. 702, 123 S. W. (2d) 20, which construed a similar provision in an act of the General Assembly providing for permanent registration in cities of 300,000 to 700,000 population. In that case a voter appealed from the action of the Board of Election Commissioners of Kansas City·denying her application to register for a city election to be held March 29, 1938. Her application was made on March 8, 1938. The board denied her application for the reason that registration for that election had closed on the preceding Saturday, March·5, 1938. Upon appeal the Circuit Court ordered that the board permit said registration. On *certiorari* to the Supreme Court, the record of the Circuit Court was quashed, the Court holding that the close-of-registration provisions of the statute there involved were mandatory in character; that they operated as a limitation upon the power and authority of the board and of ·the Circuit Court. upon appeal, so as to render the latter without jurisdiction to grant the relief ordered. The decision was based upon a consideration of the whole act, and the purpose to be served by the closing of registration, together with those provisions stating the consequences of a failure .to ·register within the time limited by the act. The result was the holding of the close-of-registration provision as mandatory.

In that case, as in the case at bar, the respondent relied upon the prior decision of the Supreme Court in State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S. W. (2d) 124, which construed provisions of the former registration statute applicable to cities of the size of Kansas City. There the Court held to be merely directory the close-of-registration provisions of that act. The Court in the Ridge case .distinguished its holding from the ruling in the Brown Case on the ground that in the act involved in the Brown case there was no provision prescribing the consequences of failure to register prior to the close of registration, while in the latter act there were definite consequences provided, which clearly indicated an intent that those registered after the close of registration should not be allowed to vote in the ensuing election.

We likewise do not think the Brown case controlling here. In that case the Board of Election Commissioners sat on July 28th, 29th, and 30th, the days designated by law for hearing applications of absentees. One Isadore Katz did not appear until Friday, August 1, 1939. His application was denied because he did not appear on one of the days provided by law. On the same day he took an appeal

to the Circuit Court, and that Court after a hearing found in favor of Katz, and entered an order that the board register said applicant as an absentee voter. The Supreme Court reviewing this ruling on *certiorari* held that it was not the intent of the Legislature that the provision limiting the time should be regarded as mandatory. The Court pointed out as evidence of this intent the omission of the act to prescribe the consequences of the failure of an applicant either to file his application within the time limited by the act, or to appear before the election commissioners on the days fixed by the law; that there was no limitation as to the time when an appeal should be taken; that no notice of the appeal was required, so that the hearing on appeal could be *ex parte*; that there was no provision requiring the elapse of any time between the filing of the appeal and the hearing in the Circuit Court; that no allowance of the appeal by the Board of Election Commissioners was necessary; nor was there any requirement that its certificate of rejection or a certified copy of its record touching the denial of registration be filed in the Circuit Court. The Court pointed out these omissions from the act in answer to the contention of the relator that the General Assembly intended the limitations in the act as mandatory, otherwise the purposes of other provisions of the act with respect to challengers would be rendered nugatory. The Court then said:

"It cannot be, therefore, that the Legislature intended to limit the power of the Board of Election Commissioners to hear the applications of absentees only on designated days, in order that the applicants might be confronted with challengers, when it placed no such limitations upon the circuit court. If in the proceeding under review the applicant, Katz, had appeared before the Board of Election Commissioners 'on one of said days' appointed by the statute and his right to be registered had been challenged on the ground that he had not resided within the State a year, and had the board after hearing the evidence *pro* and *con* sustained the challenge and denied him registration, he could notwithstanding have gone before the circuit court at such time as he deemed most propitious for his purpose and there on an *ex parte* hearing proffered only such evidence as would tend to support his application, and the court in disposing of the matter would necessarily have had to base its decision on such evidence and on that alone. The fact that relator was present on the occasion when Katz presented his 'appeal' to the circuit court and moved to dismiss it indicates merely that this is a made case, brought for the purpose of securing this court's construction of the statutory provisions which have been considered; otherwise, relator would have had no knowledge of Katz' intention to appear in the circuit court, much less of the day on which he would appear. The construction contended for would in no way aid in preventing fraudulent registration. It is of no use to tighten the bung while the spigot remains open.''

It seems to be a reasonable view that the General Assembly, when it passed the Act here under consideration, intended to avoid the defects contained in the law passed upon in the Brown case. In the 1937 Act, Section 15 provides:

"Registration for any election shall be closed at five o'clock p. m. on the 15th day preceding the election . . . and no voter shall be thereafter registered prior to said election . . ."

*Section 13* of the Act states:

"The vote of no one shall be received by said judges whose name does not appear upon said registers as a qualified voter in the precinct where such person offers to ·vote."

It thus appears that the consequences of failure to register within the time provided by the Act, which was absent in the act considered in the Brown case, is here present. Section 27 provides that the applicant before he file his petition in the Circuit Court shall present it to the Board for acknowledgment of service. This is a requirement not present in the act considered in the Brown case. Section 27 of the Act under review limits the right of appeal to those persons who make application within the time fixed by the Act, and provides that the appeal shall be taken within three days after said person has been denied registration, or after his name is stricken from the register by the Board. It is also provided that the court shall hear such application forthwith. This is a provision, the absence of which in the Act construed in the Brown case greatly influenced the court in its decision. And they are all provisions which lead us to believe that the General Assembly intended that the limitation involved in the Act under review should be regarded as mandatory.

We, therefore, hold that the close-of-registration provision in the Act is mandatory. It necessarily follows that the trial court acted beyond its jurisdiction, and its record is, accordingly quashed.

*Hughes, P. J.,* and *McCullen, J.,* concur.