**Thomas Edward JOHNSON, a minor by his next friend, Johnnia Maie Carter and Johnnia Maie Carter, Plaintiffs-Appellants,**

v.

**Charles Frank CARTHELL and Charleston R–1 School District, Defendants-Respondents.**

No. 12380.

Missouri Court of Appeals,
Southern District,
Division Three.

March 22, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court was Denied April 5, 1982.

Application to Transfer Denied May 17, 1982.

Francis J. Siebert, Scott City, for plaintiffs-appellants.

Albert C. Lowes, Catherine R. McBride, Buerkle, Lowes, Beeson & Ludwig, Jackson, for defendants-respondents.

BILLINGS, Presiding Judge.

Plaintiffs appeal from an order dismissing their petition with prejudice for failing to "state sufficient facts to state a claim for relief."

Plaintiffs' petition alleged in part as follows:

\* \* \* \* \* \*

5. That on, or about the 9th day of April, 1980, at approximately 7:45 A.M., the said Thomas Edward Johnson was a student and a passenger in a school bus owned by defendant Charleston R–1 School District and which was being driven and operated by defendant Charles Frank Carthell up and along a county road located in Mississippi County, Missouri, commonly known as "North County Shed Road."

6. That at said time and place and while plaintiff Thomas Edward Johnson was being carried in the school bus, an altercation arose between plaintiff Thomas Edward Johnson and a certain Anthony Bogan, another passenger on the bus, which said altercation was initiated by Anthony Bogan, and that during the course of the altercation defendant Charles Frank Carthell did intentionally physically hold the plaintiff Thomas Edward Johnson, thereby allowing and permitting Anthony Bogan to strike plaintiff Thomas Edward Johnson in his right eye, thereby directly and proximately causing severe, permanent and progressive injuries as of more hereinafter set forth.

7. That thereafter, defendant Charles Frank Carthell, in violation of his obligations and duties in the premises wrongfully and unlawfully and against the protest of plaintiff Thomas Edward Johnson put said plaintiff off the bus in his injured condition and at a place not close to any facility where the plaintiff could receive medical attention or acquire [sic] transportation to a medical facility, thereby compelling said plaintiff to walk a considerable distance, to-wit the distance of approximately three miles to find the necessary transportation to a medical facility for treatment for his injuries sustained.

8. That the acts of defendant Charles Frank Carthell, which are imputed to defendant Charleston R–1 School District, were in violation of the duty of said defendant to take reasonable action to protect passengers on the bus, and in particular plaintiff Thomas Edward Johnson, from unreasonable risks of physical harm and to give them first aid after it is known or there is reason to know that said plaintiff has been injured and to care for them until they can be cared for by others.

9. That the acts of defendant Charles Frank Carthell, which are imputed to defendant Charleston R–1 School District, violated the duty of said defendant to provide plaintiff Thomas Edward Johnson with a safe place and means for alighting.

\* \* \* \* \* \*

COUNT II

\* \* \* \* \* \*

3. That the aforementioned acts of the defendant Charles Frank Carthell,

which are imputed to defendant Charleston R–1 School District, directly and proximately caused and brought about the accident and injuries to plaintiff Thomas Edward Johnson heretofore described and as a result thereof plaintiff Johnnia Maie Carter was deprived of the services of her son and was required to expend substantial sums of money for medical services to treat her son's injuries and was thereby damaged in the sum of FIVE THOUSAND DOLLARS ($5,000.00).

\*    \*    \*    \*    \*    \*

■ In reviewing the trial court's action, this court can sustain the lower court's dismissal on any ground which supports the motion, whether or not the trial court relied on that ground. *J. M. Morris Construction Co. v. Mid-West Precote Co.*, 613 S.W.2d 180 (Mo.App.1981). A petition should be held good as against a motion to dismiss if the averments of the petition, accorded every reasonable and fair intendment, can state a claim which calls for the invocation of principles of substantive law which may entitle plaintiff to relief. *Staab v. Thoreson*, 579 S.W.2d 414 (Mo.App.1979). Applying these rules, we hold that the claims against defendant Charleston R–1 School District were properly dismissed. However, we reverse the trial court's dismissal as to defendant Charles Frank Carthell.

■ As subdivisions of the state, school districts are shielded by the doctrine of sovereign immunity. Exceptions are few and narrow. Proprietary functions of school districts form one exception [*State ex rel. Allen v. Barker*, 581 S.W.2d 818 (Mo. banc 1979)[1]]; the others are found in § 537.600(1), (2), RSMo 1978:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

These statutory provisions must be strictly construed. *Bartley v. Special School District of St. Louis County* (No. 44396, February 2, 1982) (Mo.App.1982).

■ As transportation for school children is generally considered a governmental function [Annotation, 33 A.L.R.3d § 8(g) (1970)] the School District's immunity is not lost to the proprietary function exception to sovereign immunity.

■ Plaintiffs rely on § 537.600(1) RSMo 1978 to establish liability of the school district. They urge that the "operation" of the bus "commenc[ed] at the time the first student entered the bus and continu[ed] until the last student disembarked from the bus."

As plaintiffs point out, there are no Missouri cases construing the phrase "operation of motor vehicles" found in § 537.600(1). However, similar language is found in § 304.010 RSMo 1978. Operating, as used in this latter section, has been construed as

1. In *Allen v. Salina Broadcasting, Inc.*, 630 S.W.2d 225 (Mo.App.1982) this court, after reversing the summary judgment granted by the trial court, remanded the cause for a factual determination as to whether the particular use of the school district-owned radio station was a governmental or proprietary function.

" 'encompass[ing] all acts *necessary* to be performed in the movement of a motor vehicle from one place to another.' " *Hay v. Ham*, 364 S.W.2d 118, 122 (Mo.App.1962) (emphasis added). Other cases considering this section have held that the opening of the doors of a parked taxi are part of its operation [*Karnes v. Ace Cab Company*, 287 S.W.2d 378 (Mo.App.1956)] and the opening of the rear doors of a parked truck are likewise part of its operation. *Teters v. Kansas City Public Utilities Service Company*, 300 S.W.2d 511 (Mo.1957).

These cases demonstrate that the operation of a motor vehicle includes nearly any activity that deals specifically with the motor vehicle, i.e., the actual physical structure and attendant parts of the vehicle.

The acts alleged to have been committed by the driver did not concern the bus in any way. The only connection to the bus was the actors' presence therein. The alleged actions of defendant Carthell were not part of the "operation" of a motor vehicle under § 537.600(1).

■ While the School District is protected from liability by sovereign immunity, individual supervisory public school employees do not enjoy this same protection. See *Spearman v. University City Public School District*, 617 S.W.2d 68 (Mo. banc 1981); *Kirksey v. Abbott*, 591 S.W.2d 751 (Mo.App. 1979).

■■ Official immunity protects "public officials from tort liability for damages arising from discretionary acts or functions in the performance of their official duties." *Jackson v. Wilson*, 581 S.W.2d 39, 42 (Mo. App.1979). Assuming, arguendo, that official immunity applies to school bus drivers, the test is whether the duty is discretionary or merely ministerial.

A ministerial function, as opposed to a discretionary function, has been defined as that "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." On the other hand, a discretionary function may be fairly defined as one necessarily requiring the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued. (Citations omitted) *Id.* at 43.

Title 5 of the Code of State Regulation sets the standards for school bus operation. Among the many duties assigned to the bus driver are the following:

(S) Driver shall assume control of all children while they are being transported and should require from them respectable and orderly behavior. Particular attention should be given to the care and protection of the smaller pupils. Any continued disorderly conduct should be reported to the proper school authorities. The administration's policy should indicate what authority is delegated to the driver and the procedure for handling disorderly conduct. 5 CSR 40–261.010(3)(S).

Pursuant to the above regulation, the School District Transportation Handbook offers further rules for its bus drivers. Of the 25 rules under "Driver Operation," only one deals with supervision of students. Rule 18 states:

The driver shall assume control of the students while they are being transported. Particular care should be given to the protection of the smaller children. The driver shall report disorderly conduct to the proper authority.

Students are charged, inter alia, with the following obligations by the Transportation Handbook:

1. The driver is in charge of the bus. Pupils must obey the driver. . . .

5. Students should remain seated and refrain from loud disorderly actions. . . .

Failure to obey rules and regulations will result in disciplinary action. Per-

sistent misbehavior could result in removal of bus riding privileges for an indefinite period of time.

Given the nature and number of regulations controlling bus drivers it is quite clear that he "is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed."

That part of the trial court's order dismissing plaintiff's petition against defendant Charleston R–1 School District is affirmed. As to defendant Carthell, the dismissal is reversed and the cause remanded.

MAUS, C. J., and TITUS and FLANIGAN, JJ., concur.