**Arlene Renee BARTLEY, b/n/f Arlee Bartley, et al., Appellants,**

v.

**SPECIAL SCHOOL DISTRICT OF ST. LOUIS COUNTY, Respondent.**

**No. 63901.**

Supreme Court of Missouri,
En Banc.

April 26, 1983.

Rehearing Denied May 31, 1983.

James W. Whitney, Jr., Clayton, for appellants.

Gerre S. Langton, Henry D. Menghini, Evans & Dixon, St. Louis, for respondent.

Michael A. Wolff, Stephen H. Ringkamp, Hullverson, Hullverson & Frank, Inc., St. Louis, amicus curiae, for Mo. Assoc. of Trial Attys.

Donald W. Bird, Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, amicus curiae, for Mo. Hwy. & Transp. Comm.

GUNN, Judge.

This appeal focuses on sovereign immunity as prescribed by § 537.600 and 537.610, RSMo 1978. The issue is whether sovereign immunity is waived by maintaining liability insurance. The trial court sustained defendant-respondent's motion to dismiss for failure to state a cause of action. The Missouri Court of Appeals, Eastern District, affirmed the trial court's action. This Court granted transfer, now considering plaintiff's appeal as originally taken here. Mo.Const. art. V, § 10. We affirm.

The facts as taken from the Eastern District's opinion written by Judge Crist are plain enough:

Appellants (plaintiffs) filed suit against respondent (defendant school) for damages allegedly resulting from injuries sustained by school bus riding students, Arlene Renee Bartley and Wendy Owens, as a result of negligence of the school in permitting another student of dangerous propensities to ride the school bus and cause harm to Bartley and Owens. Plaintiffs further alleged defendant school maintained liability insurance against all claims charged in their petition and thereby waived sovereign immunity pursuant to § 537.610, RSMo 1978.

The question posed is: did the defendant school waive its sovereign immunity by reason of maintaining liability insurance on the claims alleged? The trial court thought not; and neither do we.

In *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977), this Court abrogated the doctrine of sovereign immunity prospectively as to all claims arising on or after August 15, 1978. The legislature then disenacted the effect of *Jones* by the passage of §§ 537.600 and 537.610, reestablishing with some modification the doctrine of sovereign immunity. The negligence alleged in this case occurred after August 15, 1978 and after the enactment of §§ 537.600

and 537.610. Thus, those statutes become the cynosure of this appeal.

Section 537.600 provides:

Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

The pertinent parts of § 537.610 provide:

1. The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims made against the state or the political subdivi-

sion, but the maximum amount of such coverage shall not exceed eight hundred thousand dollars for all claims arising out of a single occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workmen's compensation law, chapter 287, RSMo, and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

2. The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650 shall not exceed eight hundred thousand dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workmen's compensation law, chapter 287, RSMo.

Under § 537.600, the Missouri legislature provided that sovereign tort immunity as it existed prior to the date of the *Jones* decision was to remain in effect, except as modified by statute, and except for two specific areas of tort liability: 1) injuries arising out of the negligent operation of a motor vehicle by a public employee within the course of his employment, and 2) injuries caused by the dangerous condition of a public entity's property.[1]

The specific extent of the waiver of sovereign immunity by §§ 537.600–.610 has not

---

1. Prior to *Jones,* entities of the state were not liable in tort when functioning in a governmental, or sovereign, capacity unless express statutory consent existed. Of course, entities of the state could be sued without consent when functioning in a proprietary, or non-sovereign, capacity. *Fowler v. Board of Regents,* 637 S.W.2d 352, 353 (Mo.App.1982); Section 71.-

185, RSMo 1969, gave express statutory consent to municipalities to purchase insurance and to be sued to the policy limits for torts committed in governmental capacity functions. Section 226.092, RSMo 1978 and § 34.275, RSMo 1978 permit acquisition of insurance for state owned vehicles but leave the doctrine of sovereign immunity unabated.

been decided by this Court, although in *Winston v. Reorganized School District R–2*, 636 S.W.2d 324 (Mo. banc 1982), it was determined that limiting the waiver to the expressly named exceptions of § 537.600 was not unconstitutional.[2]

There are three variables appertaining in the statutes under consideration: 1) the two named exceptions to sovereign immunity in § 537.600—vehicle accidents and condition of property; 2) whether the governmental entity was functioning in a governmental or proprietary capacity; 3) whether the governmental entity procured insurance.

Plaintiffs argue that sovereign immunity has been waived, or abrogated, in the two named instances without regard to insurance and in all other torts when the entity has insurance without regard to the governmental/proprietary function distinction. Defendant asserts sovereign immunity is waived only in the two named instances of § 537.600 without regard to the governmental/proprietary functions distinction but only when the entity has acquired insurance.

A threshold issue is the effect of *Jones* and the subsequent enactment of §§ 537.-600–.650, RSMo 1978 upon the construction of statutes pertaining to sovereign immunity. Denouement of the issue presented comes from following the guideposts of statutory construction.

■■■■ It is, of course, aphoristic that words used in statutes are to be considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *Beiser v. Parkway School District*, 589 S.W.2d 277, 280 (Mo. banc 1979). And the legislative intent and the meaning of words used in a statute can in many instances be found in the general purposes of a legislative enactment. *Bank of Crestwood v. Gravois Bank*, 616 S.W.2d 505, 510 (Mo. banc

1981). The provisions of a single legislative act must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning. *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 144 (Mo. banc 1980). Further, it is presumed that the legislature does not enact meaningless provisions. *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 446 (Mo. banc 1980).

■■■■ If the legislature enacts two laws on the same subject that are irreconcilable, the latter has the effect of repealing the former. *Bullington v. State*, 459 S.W.2d 334, 339 (Mo.1970). But for repeal of a statute by implication, the statutes must be so inimical to each other that both cannot stand and the legislature, in fact, intended repeal although it did not do so. *Kansas City Terminal Railway Co. v. Industrial Commission*, 396 S.W.2d 678, 683 (Mo.1965). And where two acts are seemingly incompatible, they must, if feasible, be so construed that the later act will not operate as a repealer by implication, since if they are not irreconcilably inconsistent, both must stand. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). Statutes must be read in pari materia, and if possible effect must be given to each clause and provision; where one statute deals with a subject in general terms and another in specific terms, the two should be harmonized when reasonable; but to the extent of any discord between them, the definite statute prevails. *State ex rel. Fort Zumwalt School District v. Dickherber*, 576 S.W.2d 532, 536–37 (Mo. banc 1979). It is also basic that this Court is not to make new laws, particularly when the legislature has spoken on the subject within constitutional framework. What follows, then, will track the foregoing indited rubrics of statutory construction and accomodate the history of the statutes involved.

An initial question, however, is whether after stillborn abrogation of the doctrine of

---

2. Prior to the decision of the Eastern District in this case, several decisions of the district courts of appeal have implied in dicta that § 537.600 is exclusive. *State ex rel. Eli Lilli & Co. v. Gaertner*, 619 S.W.2d 761, 763 (Mo.App.1981) (n. 4); *Conner v. Crawford County*, 588 S.W.2d

532, 533 (Mo.App.1979) (n. 1); *Bailey v. City of St. Louis*, 578 S.W.2d 279, 282 (Mo.App.1979) (n. 2); *Strong v. Curators of the University of Missouri*, 575 S.W.2d 812, 813 (Mo.App.1979) (n. 3).

sovereign immunity in *Jones* and its subsequent statutory revival, sovereign immunity is the rule or the exception, and whether waivers of the doctrine are to be construed liberally or strictly. Those in support of plaintiffs' theory contend that sovereign immunity is now the exception and that statutory exceptions to immunity must be liberally construed. But that is not the rule. More appropriately, the guiding principle is found in *Johnson v. Carthell*, 631 S.W.2d 923, 926 (Mo.App.1982), which holds, in applying § 537.600(1), (2), that exceptions to sovereign immunity are few and narrow.

■ Section 537.600 states that the doctrine of sovereign immunity as it existed at common law in Missouri prior to September 12, 1977, except as modified, abrogated or waived by statute remains in full force and effect. Prior to that date, sovereign immunity was the rule, not the exception, and it must be inferred from the words and the structure of this statutory pronouncement that the legislature intended to reenact sovereign immunity as the rule: for the proposition begins and ends with the independent clause stating that sovereign immunity is in full force and effect. The conclusion reached is that the legislative intent was not to carve out legislative exceptions to what under *Jones* became a judicial abrogation of sovereign immunity, but was, rather, to overrule *Jones* and to carve out limited exceptions to a general rule of immunity.[3] Hence, we are bound to hold that statutory provisions that waive sovereign immunity must be strictly construed. *Beiser v. Parkway School District*, 589 S.W.2d 277, 280 (Mo. banc 1979). This leads to the conclusion that plaintiffs have not stated a cause of action.

It is clear that prior to *Jones,* plaintiffs would have had no cause of action. It is equally evident that after the enactment of

§§ 537.600 and .610 they are still destitute of any cause of action under these facts, for, after all, the General Assembly's enactment only waived sovereign immunity as provided in subsections (1) and (2) of § 537.600 and then only to the extent the public entity has purchased liability insurance for such purposes.

*Beiser v. Parkway School District*, 589 S.W.2d at 281, and other school district decisions lend support to this result. *Beiser* holds that a school district is not a municipality for purposes of § 71.185 and that the acquisition of liability insurance does not invoke a waiver of liability under that statute. *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 825 (Mo. banc 1979), holds that a school district's immunity from suit is the general rule, and non-immunity is the exception. *Johnson v. Carthell*, 631 S.W.2d at 926, involves a post-*Jones* occurrence, and applying §§ 537.600—.650, holds that school district transportation is a governmental rather than a proprietary function. Finally, *Lehmen v. Wansing,* 624 S.W.2d 1, 2 (Mo. banc 1981), emphasizes that the acquisition of insurance by a school district does not waive its sovereign immunity in a case arising before the new statute.

Therefore, under pre-*Jones* law, plaintiffs could not recover under the proprietary function exception nor under the insurance coverage exception to immunity in governmental functions. Any remedy which plaintiffs have under the facts of this case must be found within one of the exceptions to sovereign immunity created by § 537.-600, *et seq.,* and none exists.

In order to recover under a statutory exception, plaintiffs must do so under a construction that is not inconsistent with two propositions: first, that the express waivers of § 537.600 depend upon the acquisition of insurance; second, that the statute preserves the governmental/proprietary distinction.[4] The first proposition

---

**3.** *See Strong v. Curators of the University of Missouri,* 575 S.W.2d at 813 (n. 3), stating "Sections 537.600–537.650, 1978 Mo. Legis. Serv., effective August 13, 1978, provide for conditions of sovereign immunity and substantially modify the effect of *Jones v. State Highway Commission,* supra, particularly to the

State and its political subdivisions having insurance."

**4.** *See Johnson v. Carthell,* 631 S.W.2d at 926, which impliedly finds the statutory distinction in holding that a school district's transportation program is a governmental function.

is mandated by the general precept established above that sovereign immunity is the rule and waiver is the exception. It is also the apparent intent of the legislature as evidenced by the manner in which the General Assembly has treated waivers of immunity in the past, and urged on us by the effect of a contrary proposition upon other statutes. Prior to *Jones,* immunity was waived in governmental functions only when the entity had acquired insurance. But it is also to be observed that the General Assembly did not always permit waiver where it permitted insurance. Sec. 105.850, RSMo 1969; § 226.092, RSMo Supp.1971; § 34.275, RSMo Supp.1973. Insurance was, therefore, a necessary but not always a sufficient condition of waiver. The concern of the General Assembly for adequate financial planning evidenced by this policy of restrictive waiver was accommodated by this Court in *Jones* by a prospective nullification of sovereign immunity as to claims arising on or after August 15, 1978. *Jones v. State Highway Commission,* 557 S.W.2d at 231. And of the new statutory scheme this Court stated that "[i]t is readily apparent that the legislature intended to balance the need for protection of government funds against a desire to allow redress for claimants injured in limited classes of accidents." *Winston v. Reorganized School District R–2,* 636 S.W.2d at 328. Finally, a finding that the two exceptions to immunity in § 537.600 exist regardless of insurance would repeal § 71.185 by implication—a disfavored result. *State v. Kraus,* 530 S.W.2d at 686.

Plaintiffs cannot meet the above requirements. First, if the General Assembly intended to waive sovereign immunity for governmental functions in all torts where insurance was acquired, it need only have provided that language. But in that situation, paragraphs (1) and (2) of § 537.600 would be needless rhetoric which should not be attributed to the legislature. Second, adoption of plaintiffs' theory would cancel the proprietary/governmental function distinction, because acquisition of insurance for claims arising out of proprietary functions would cause liability for claims arising out of governmental functions. This latter consequence certainly has not been contemplated by the General Assembly.

Plaintiffs are not handicapped by the absence of able assistance in the presentation of their position. Those on their behalf contend that the language of § 537.600 grants two waivers to sovereign immunity regardless of insurance and a third waiver when insurance is acquired.

█ First, they argue that the circuit court and Eastern District ignore the phrase in § 537.610(1) which provides: "notwithstanding any other provision of law." Their argument is that this phrase is a contrapositive conjunction and is meaningful only if § 537.610 is construed to grant a third waiver of immunity. But the answer to this thesis is that relative and qualifying words, phrases or clauses are to be applied to words or phrases in immediate context under the "last antecedent doctrine" and are not to be construed as extending to or including others more remote. *Elliot v. James Patrick Hauling, Inc.,* 490 S.W.2d 284, 287 (Mo.App.1973). The phrase in this instance functions as an adverb modifying "purchase," and the entire meaning is that such purchase is authorized and is not an ultra vires or illegal act.

Second, plaintiffs argue redundancy between §§ 537.610(1) and 537.610(2). But the plain fact is that regardless of what construction is placed on § 537.610(2), it remains circumlocutory in relation to § 537.610(1), and that plaintiffs' construction is no remedy for that flaw but merely exacerbates it.

Third, plaintiffs assert that the circuit court's construction renders superfluous the phrase "tort claims" in § 537.610, which may be given full meaning only if construed contrary to the "negligent acts or omissions" referred to in § 537.600. "Tort claims" is not rendered needless, however, by construing it merely to refer to the antecedents in § 537.600. On the contrary, such a construction expressly links the sections. A word or phrase is not excessive or meaningless by construing it as a statutory structural support; and not every statutory word or phrase must express substantive

permission or prohibition in order to be meaningful.

Plaintiffs also urge that if the legislature had intended § 537.610 as a condition precedent to the waivers of § 537.600, it would have expressly stated so. But such a construction should not be made on a mere negative or hiatus in the language. Other bases for rejecting this argument are that the legislature displayed its knowledge of express waiver in the exceptions of § 537.600 and that no such waiver appears in that section with reference to "tort claims." Furthermore, plaintiffs' contention would mandate the inference of repeal of § 71.185 —municipal tort liability, insurance—and such a disfavored inference is not necessary to a construction of §§ 537.600–.650 that gives reasonable meaning to all its parts.

The trial court's decision does not result in the discords in §§ 537.600 and .610 as suggested by plaintiffs. Rather, the strict construction of §§ 537.600—.610 harmonizes the two sections. Thus, sovereign immunity is only waived in the two areas provided by § 537.600, and then only to the extent that the public entity acquires insurance for such purpose. Arguably, any coverage purpose beyond the two areas would not constitute a waiver of sovereign immunity by the public entity. *See Lehmen v. Wansing,* 624 S.W.2d at 2; *Spearman v. University City Public School District,* 617 S.W.2d 68, 69 (Mo. banc 1981) (availability and purchase of liability insurance do not enervate sovereign immunity defense).

■ In sum: the law is consistent that prior to *Jones,* school district transportation services of the type provided in this case were governmental functions under the aegis of the sovereign immunity doctrine. By enacting §§ 537.600—.650 the Missouri legislature intended to reestablish the doctrine as it existed prior to *Jones* with any exceptions to its status being provided in those sections enacted. Under intrinsic principles of statutory construction, any treatment given by this court to the doctrine established by the legislature requires strict and narrow legal exegesis. In following these basic guidelines, we find that the only exceptions to the doctrine as it existed prior

to *Jones* are those contained in § 537.600(1) and (2)—operation of motor vehicles and condition of property—as modified by § 537.610, when insurance has been acquired. The exceptions of §§ 537.600—.610 do not pertain to the circumstances of this case; hence, plaintiffs have no cause of action.

Judgment affirmed.

WELLIVER, HIGGINS and DONNELLY, JJ., concur.

WASSERSTROM, Special Judge, dissents in separate opinion filed.

RENDLEN, C.J., and SEILER, Senior Judge, dissent and concur in separate dissenting opinion of WASSERSTROM, Special Judge.

BILLINGS, J., not sitting.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.

WASSERSTROM, Special Judge, dissenting.

The statutes under consideration, Sections 537.600 and 537.610, are susceptible to two different and conflicting constructions:

*Construction No. 1.* The General Assembly intended to waive sovereign immunity solely in the two situations described in Section 537.600, *i.e.* injuries from operation of vehicles by public employees and injuries arising from dangerous conditions of public property. The legislature further intended that even that waiver be limited so that the public entity would have no liability in excess of liability insurance purchased by it or provided in a self-insurance plan adopted by it. This construction is urged by the defendant School District and by amicus Missouri Highway & Transportation Commission ("the Highway Commission").

*Construction No. 2.* This alternative construction is that the legislature intended a waiver of sovereign immunity in the two situations specified in Section 537.600, subject to the dollar limitation specified in Section 537.610–2. The public entity under

this construction would have liability to the public in the two situations specified in Section 537.600 (subject to the dollar limitation mentioned) irrespective of whether the public entity carried insurance or not. In addition, the legislature also intended a further waiver of sovereign immunity as to any other tort claims against any political subdivision to the extent of liability insurance purchased by it or any self-insurance plan adopted by it. This construction of the statutes is urged by plaintiff and by amicus Missouri Association of Trial Attorneys.

Credible arguments can be made supporting either construction of these ambiguous statutory provisions. The weight of logic, however, favors Construction No. 2. Because the majority opinion adopts Construction No. 1 and rejects Construction No. 2, I must respectfully dissent.

## I.

If Construction No. 1 be approved, as the majority opinion does, a necessary result follows that a public entity has no liability even in situations specified in Section 537.-600 if it decides in its own sole discretion not to purchase liability insurance or adopt a self-insurance plan. Indeed, that very result is urged and attempted to be justified by the amicus Highway Commission. The Highway Commission states in its brief that it has been sued in a large number of cases for injuries suffered on the property of the Commission alleged by the various claimants to be in dangerous condition, a type of claim specified in Section 537.600. The Commission nevertheless argues that it is immune from liability because it has no liability insurance, and it contends that the existence of insurance is necessary to a waiver of its sovereign immunity.

Approval of that result means that any public entity can set at naught the express waiver of sovereign immunity under Section 537.600, by the simple expedient of refusing to purchase insurance. I cannot believe that the General Assembly intended such an unreasonable result or contemplated that the Sovereign Immunity Act would result in such a "local option."

Standard rules of statutory construction provide that the unreasonable result just mentioned is sound basis for rejecting Construction No. 1 which gives rise to it. Where a statute permits of more than one interpretation, the bad consequences which will flow from one interpretation justifies a court in rejecting that interpretation. *Laclede Gas Co. v. City of St. Louis,* 363 Mo. 842, 253 S.W.2d 832 (Mo. banc 1953); *Bowers v. Missouri Mut. Ass'n.,* 333 Mo. 492, 62 S.W.2d 1058 (1933); *Browder v. Milla,* 296 S.W.2d 502 (Mo.App.1956); *State ex rel. Slinkard v. Grebe,* 249 S.W.2d 468 (Mo.App. 1952); *Roberts v. City of St. Louis,* 242 S.W.2d 293 (Mo.App.1951); *Memmel v. Thomas,* 238 Mo.App. 403, 181 S.W.2d 168 (1944); *State ex rel. Hay v. Flynn,* 235 Mo.App. 1003, 147 S.W.2d 210 (1941); *McGill v. City of St. Joseph,* 225 Mo.App. 1033, 38 S.W.2d 725 (1931). As stated in Sands, 2A *Sutherland Statutory Construction* § 45.12 (4th ed.):

"It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. It is said to be a 'well established principle of statutory interpretation that the law favors rational and sensible construction.' "

Section 537.600 plainly waives sovereign immunity in the two classes of cases specified. Yet, if the majority be correct, one school district which elects not to buy insurance will escape liability to a claimant even though the situation be one of those specified in Section 537.600, while another school district which buys liability insurance will be liable and will respond in damages to another claimant in exactly the same circumstances. Can it be thought that the General Assembly intended such a difference of result between two claimants both injured under circumstances specified in Section 537.600? I submit that such a discrimination was not contemplated by the legislature. This court should not adopt, of two possible interpretations, that one which

will produce an unequal, discriminatory operation. This proposition is well stated in 73 Am.Jur.2d *Statutes* § 261 (1974): "An intent to discriminate unjustly between different cases of the same kind is not to be ascribed to the legislature. Hence, where the legislature has clearly laid down a rule for one class of cases, it is not readily to be supposed that, in the same act, a different rule has been prescribed for another class of cases within the same reason as the first ... [N]othing but clear and unmistakable language will warrant a court in a construction which will produce the unequal operation of a statute...."

## II.

Another compelling reason for rejecting Construction No. 1 is that it makes Section 537.610–2 meaningless and redundant, thereby violating the rule that a statute is to be interpreted as a whole and meaning should be given to all parts. *State v. Van Horn,* 625 S.W.2d 874 (Mo.1982); *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981); *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137 (Mo. banc 1980); *Estate of DeWitt v. State,* 603 S.W.2d 931 (Mo. banc 1980); *City of Willow Springs v. Mo. State Librarian,* 596 S.W.2d 441 (Mo. banc 1980); *State ex rel. Fort Zumwalt School District v. Dickherber,* 576 S.W.2d 532 (Mo. banc 1979); *Missouri Pacific Railroad Company v. Kuehle,* 482 S.W.2d 505 (Mo.1972).

If Construction No. 1, approved here by the majority opinion, be correct, then the waiver of immunity under Section 537.600 is limited by the provisions of Section 537.-610–1. Not only would the latter subsection impose a requirement of insurance before liability could attach, but that subsection would also restrict the amount of insurance to $800,000 for all claims out of a single occurrence and $100,000 for any one person, and it would not permit recovery in excess of those limits. It must be pointed out that Section 537.610–2 also limits liability of any public entity to $800,000 in any one occurrence and $100,000 to any one person. Under Construction No. 1, approved by the majority, no function is left for the provisions of subsection 2, since the same purpose would already have been accomplished by subsection 1. Subsection 2 of Section 537.610 under Construction No. 1 therefore becomes meaningless and redundant.

On the other hand, Construction No. 2 makes room for the operation of Section 537.610–2. Under this construction, the specific waiver under Section 537.610 is not subject to the first subparagraph of Section 537.610, but it is subject to the second subsection. Thus, under Construction No. 2, subsection 2 of Section 537.610 is necessary to establish the dollar limit of $800,000 in any one occurrence and $100,000 to any one claimant to the two situations specified in Section 537.600.

In this connection, it is significant that Section 537.600 and Section 537.610–2 both apply to "public entities." By contrast, subsection 1 of Section 537.610 applies by its terms to each "political subdivision." The use of the same term in Section 537.600 and Section 537.610–2 bespeaks an interrelationship, consistent with Construction No. 2. The use of a different term in Section 537.610–1 tends to show that the legislature did not intend such an interrelationship between that subsection and Section 537.600, but rather that each was directed to a different purpose, thereby undercutting the entire basis for Construction No. 1.

## III.

The majority opinion suggests that Construction No. 1 is consistent with past legislative action in permitting suits against public bodies, whereas Construction No. 2 is not. That conclusion is faulty. The majority seeks to justify its conclusion by the following statement at page 869: "Prior to *Jones,* immunity was waived in governmental functions only when the entity had acquired insurance." Not so. Section 105.-810 provides for the state to become liable for workmen's compensation claims and further provides: "The state of Missouri shall have the option to become a self-insurer and assume all liability imposed by chapter 287, RSMo ... and if the state elects to self-insure, the attorney general shall ap-

pear on behalf of and defend the state in all actions brought by state employees under the provisions of the workmen's compensation law." Thus, in that situation, the legislature saw fit not to make the waiver of sovereign immunity dependent upon the purchase of insurance.

Moreover, the concept of interpreting Section 537.610–1 as permitting liability by public bodies to the extent of insurance coverage is not new. Section 71.185 did just that but limited its operation to municipal corporations. Section 537.610–1, as interpreted by Construction No. 2, essentially extends to all political subdivisions the same option previously granted only to municipal corporations. Thus, this construction would allow suit in the situation presented by *Beiser v. Parkway School Dist.,* 589 S.W.2d 277 (Mo. banc 1979), where a school district was held not to be within the scope of Section 71.185 because it was not a "municipal corporation." *See* Note, *Sovereign Immunity: Application of Missouri's 1978 Sovereign Immunity Legislation to School Districts,* 45 Mo.L.R. 771, 778 (1980).

## IV.

Other arguments contained in the majority opinion merit at least brief response:

A. *Proprietary vs. Governmental Functions.* The majority states at page 868 that a construction of these statutes should not be adopted unless it is consistent with the preservation of the governmental/proprietary distinction. Assuming that this is indeed necessary, Construction No. 2 does leave room for the operation of old rule that sovereign immunity does not apply in cases where the governmental body is exercising a proprietary function. This can be demonstrated by the following illustration. Let us assume that a municipal corporation owns and operates an electric light plant, which is a proprietary function. *Lockhart v. Kansas City,* 351 Mo. 1218, 175 S.W.2d 814 (1943). Let us further assume that the municipal corporation is negligent in that operation and has no insurance coverage. This situation would not fall within either of the types of cases specified in Section 537.600; nor would it fall within the scope of Section 537.610–1 as

interpreted under Construction No. 2. Nevertheless, the municipal corporation would not be entitled to sovereign immunity because of the continued operation of the old doctrine that a public body is liable for acts done in its proprietary capacity.

B. *Protection of Public Funds.* The majority also seeks to justify its interpretation on the theory that the legislature intended to balance the need for protection of government funds against a desire to allow redress for claimants injured in limited classes of accidents, citing *Winston v. Reorganized Sch. Dist. R–2, etc.,* 636 S.W.2d 324 (Mo. banc 1982). There can be no doubt but that the legislature did have such a balancing process in mind, and it did accomplish just that balance by waiving sovereign immunity in the two specified classes of cases in Section 537.600, but limiting the dollar amount of recovery by the provision of Section 537.610–2.

Furthermore, while public entities should be held liable to suit in the two situations specified in Section 537.600 whether or not insurance has been purchased, that is not to say that each public entity may not purchase public liability insurance to protect the public treasury. It will be noted that Section 537.610–1 authorizes the purchase of liability insurance for any and all tort claims made against the state or any political subdivision.

Although assuredly the legislature was endeavoring to achieve a fair balance between doing justice to injured claimants while at the same time protecting public funds, the adoption of Construction No. 1 swings far too much in favor of the public treasury and gives much too little attention to doing justice to injured claimants.

C. *Strict Construction.* The majority lays great stress on the canon of construction under which a statute waiving sovereign immunity is to be strictly construed. That canon, however, is simply one of many standards of statutory construction. As already shown in this dissenting opinion, there are other canons which call for the adoption of Construction No. 2, rather than the adoption of Construction No. 1. When all is said, the ultimate test to be applied is

the ascertainment of the legislative intention. For reasons already stated, I am satisfied that Construction No. 2 will best carry out what the General Assembly intended.

In my view, the judgment should be reversed and the cause remanded for trial.