Hazel **FIELDS**, Appellant,

v.

**The CURATORS OF The UNIVERSITY
OF MISSOURI, et al., Respondents.**

**No. WD 46218.**

Missouri Court of Appeals,
Western District.

March 2, 1993.

Robert Bennett, Bridgeton, for appellant.

Raymond C. Lewis, Jr., Columbia, for respondents.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Hazel Fields, appeals the order of the trial court dismissing, with prejudice, her petition for medical malpractice against respondents, the Curators of the University of Missouri (Curators), Steven Kaster, M.D., Vickie Park, M.D. and Barry Gainor, M.D. (individual defendants). The Curators were dismissed on the basis of sovereign immunity and the individual defendants were dismissed because appellant failed to file affidavits sufficient to meet the requirements of section 538.225, RSMo 1986.[1]

■ In her first point on appeal, appellant argues that the trial court erred in dismissing the individual defendants because her affidavits pursuant to section 538.225 were sufficient.

Section 538.225 provides as follows:

**Affidavit by a health care provider certifying merit of case—content filed, when—failure to file, effect.**

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a *legally qualified health care provider* which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

3. A separate affidavit shall be filed for each defendant named in the petition.

4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended.

5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice. (emphasis added).

Appellant filed separate affidavits in relation to each of the individual defendants. However, in each affidavit appellant stated that she had obtained the opinion of a licensed practical nurse that the doctor in question failed to use such care as a reasonably prudent and careful health care provider would have used under similar circumstances and that such failure directly caused or contributed to cause the damages of which her petition complained.

A licensed practical nurse is a health care provider as defined under section 538.-205(4), RSMo 1986. However, the trial court held that a licensed practical nurse is not legally qualified to render an opinion as to the standard of care provided by a physician. Appellant argues that a licensed practical nurse is so qualified.

■ The test of whether an expert witness is legally qualified to render an opinion is whether the witness has acquired, by technical training and practical experience, special knowledge not shared by men in general. *Cebula v. Benoit*, 652 S.W.2d 304, 308 (Mo.App.1983) (citing *Meyers v. Wells*, 273 S.W. 110, 115 (Mo.1925)). Additionally, when non-doctors are called to render an opinion as to the standard of care that a physician must meet in a particular situation, the rather unusual circumstances which make the witness competent to testify as to the standard of care of a profession of which the witness is not a member must first be shown. *Id.* at 309. In other words, a non-physician is not legally qualified to render an opinion as to the standard of care of a physician unless the unusual circumstances that otherwise qualify the non-physician are first presented.

■ Appellant presented nothing to show the qualifications of the licensed practical nurse upon whose opinion she relied

---

1. All references to section 538.225 are to RSMo 1986.

which would render the nurse legally qualified to state a standard of care opinion under the circumstances of the case at bar. Appellant's affidavits did not comply with the requirements of section 538.225. However, a dismissal without prejudice is the only sanction for which section 538.225 allows for noncompliance with the affidavit condition. *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503, 506 (Mo. banc 1991). Therefore, it was error for the trial court to order that the dismissal as to the individual defendants be with prejudice.

In her second point, appellant argues that the trial court erred by dismissing her petition against the Curators, a public entity, for failure to state a claim on the basis of sovereign immunity. Appellant argues that sovereign immunity is waived when a political subdivision purchases liability insurance for tort claims and since it was yet to be determined whether the Curators had liability insurance to cover her claim it could not be stated as a matter of law that sovereign immunity applied.

The statutes relevant to the question presented in relation to this point are section 537.600, RSMo Supp.1992, and section 537.610, RSMo Supp.1992.

Section 537.600, RSMo Supp.1992, provides, in pertinent part, as follows:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition ...

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

Section 537.610, RSMo Supp.1992, provides, in pertinent part, as follows:

1. The ... governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against ... the political subdivision, but the maximum amount of such coverage shall not exceed one million dollars for all claims arising out of a single occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, ... and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted

by the governing body of any political subdivision of the state.

2. The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law....

■ Appellant argues that pursuant to the terms of section 537.610, RSMo Supp. 1992, a public entity waives sovereign immunity for torts other than those arising out of the operation of motor vehicles and the condition of property, as addressed under section 537.600, RSMo Supp.1992, when the public entity purchases liability insurance coverage for other tort claims. Respondent, relying on *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 870 (Mo. banc 1983), argues that section 537.610, RSMo Supp.1992, does not establish an independent insurance-based waiver of sovereign immunity.

*Bartley* held that under sections 537.600 and 537.610, RSMo 1978, predecessor statutes to sections 537.600 and 537.610, RSMo Supp.1992, sovereign immunity was only waived in regard to the operation of motor vehicles and the condition of property and then only to the extent that the public entity acquires insurance for such purpose. *Id.* at 870. *Bartley* rejected the proposition of an independent insurance-based waiver of sovereign immunity. *Id.* at 869. However, we do not find *Bartley* to be controlling.

Since *Bartley*, the legislature has amended sections 537.600 and 537.610. As relevant to this cause the legislature amended section 537.600, RSMo 1978, by adding subparagraph 2 under section 537.600, RSMo Supp.1992. By so doing, the legislature emasculated the holding in *Bartley* that sovereign immunity was only waived in regard to the operation of motor vehicles and the condition of property and then only to the extent that insurance was acquired.

The question presented by appellant on this point has been recently addressed by the Missouri Supreme Court and the southern district of this court. In *Balderree v. Beeman*, 837 S.W.2d 309 (Mo.App.1992), the southern district of this court took guidance from the Missouri Supreme Court on this question in *State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621 (Mo. banc 1990), a case decided subsequent to *Bartley*. *Balderree* concluded upon analyzing the holding in *Cass* that the Missouri Supreme Court "recognized that § 537.610 provides an independent basis for waiving sovereign immunity, i.e., where the public entity purchases insurance covering a type of claim other than described in § 537.600.-1(1) and (2)." *Balderree*, 837 S.W.2d at 318.[2]

In *State ex rel. Board of Trustees v. Russell*, 843 S.W.2d 353 (Mo. banc 1992), the Missouri Supreme Court, without reference to *Balderree*, held in accord with *Balderree* that even when public entities have full sovereign immunity, they may waive that immunity through the purchase of insurance as provided in section 537.610.

Under *Balderree*, *Russell*, and the provisions of section 537.610, RSMo Supp.1992, appellant correctly argues that sovereign

---

**2.** The court in *Balderree* was concerned with sections 537.600 and 537.610, RSMo 1986, which were the statutes in effect on the date of the occurrence in *Balderree*. However, the court recognized that said statutes had been amended in 1989. *Balderree* discussed the amendments and stated that the result of the amendment to section 537.600 (currently cited as section 537.600, RSMo Supp.1992), was the addition to section 537.600 of three subsections numbered 3 through 5 which subsections *Balderree* found immaterial to the question of the effect of insurance on sovereign immunity.

*Balderree*, 837 S.W.2d at 314 n. 4. Likewise, the amendment to section 537.610, (currently cited as section 537.610, RSMo Supp.1992), was recognized in *Balderree* as immaterial to the same question. *Id.* at 317 n. 5.

In *State ex rel. Board of Trustees v. Russell*, 843 S.W.2d 353 (Mo. banc 1992), the Missouri Supreme Court did not mention the amendments to section 537.610, RSMo 1986 in RSMo Supp.1992. Nonetheless, we concur with the analysis in *Balderree* finding the amendments to be immaterial to the question of the effect of insurance on sovereign immunity.

immunity is waived when a political subdivision purchases liability insurance for tort claims and that the trial court must determine whether the Curators had liability insurance to cover her claim before stating that sovereign immunity applied as a matter of law. Accordingly, the trial court erred by dismissing the Curators on the basis of sovereign immunity.

 Nonetheless, an appellate court will affirm the judgment of the trial court if the trial court has reached the correct result, even though the decision of the appellate court may be based on reasons not given by the trial court. *Kaiser v. Moulton*, 631 S.W.2d 44, 46–47 (Mo.App.1981). Thus, even though the trial court erred by dismissing the Curators on the basis of sovereign immunity, the trial court was correct in dismissing appellant's claim against the Curators because appellant sued the Curators as health care providers and, as discussed under appellant's first point, appellant failed to file a sufficient affidavit pursuant to section 538.225.

Section 538.205(4) defines a health care provider as:

[A]ny physician, hospital, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate;

In the case at bar, appellant alleged in her petition that "[a]t all times relevant to the petition herein, Defendant The Curators of the University of Missouri (hereinafter referred to as University Hospital & Clinics) has been a public hospital operating in Boone County, Missouri." By the allegations of her petition it is clear that appellant sued the Curators in their capacity as health care providers operating the "University Hospital & Clinics." Therefore, the affidavit requirement of section 538.225 was equally applicable to the Curators as to the individual defendants herein. Appellant's affidavit being insufficient, appellant's petition against the Curators was subject to dismissal without prejudice, the same as with the individual defendants.

The judgment of the trial court dismissing the individual defendants with prejudice is reversed and the trial court is directed to enter judgment dismissing the individual defendants without prejudice. The judgment of the trial court dismissing the Curators on the basis of sovereign immunity is also reversed. The trial court is directed to enter judgment dismissing the Curators without prejudice.[3]

All concur.

---

**3.** The parties do not present any question as to the ability of appellant to re-file her action pursuant to a dismissal without prejudice under the applicable statute of limitations, section 516.-105. This question not being before us, we make no comment on appellant's ability to re-file.