Dear Mr. Ankrom:
This opinion letter is in response to your question asking:
 Polk County, a third-class county, has not had an elected county surveyor for several years. Recently, a local surveyor has indicated his desire to run for that position in 1988. Are we, under Section 60.010, RSMo, required to have an elected county surveyor?
Sections 60.010 through 60.100, RSMo 1986, set forth the statutory provisions establishing the office of county surveyor in second, third and fourth class counties. Section 60.010
provides for the election of a county surveyor every four years. The rest of the sections make provisions as to the oath of office, official bond, transfer of official papers at the expiration of the county surveyor's term or upon his death, appointment of deputies and the surveyor's charge for services. For the purposes of your question, Section 60.010 is the focus of our attention. Section 60.010 provides:
 60.010. Surveyor to be elected in certain counties — qualifications — term. — At the regular general election in the year 1948, and every four years thereafter, the voters of each county of this state in classes two, three and four shall elect a registered land surveyor as county surveyor, who shall hold his office for four years and until his successor is duly elected, commissioned and qualified. The person elected shall be commissioned by the governor.
When interpreting a statute, the intention of the legislature must be determined from the plain and ordinary meaning of the words used as well as considering the statute as a whole including its object and the consequences that would result from construing it one way or the other. State ex rel.Hay v. Flynn, 235 Mo.App. 1003, 147 S.W.2d 210, 211 (St.L. Ct.App. 1941). Although not a universal rule, courts normally construe the word "shall" as having a mandatory meaning.State ex rel. Dreer v. Public School Retirement System,519 S.W.2d 290, 296 (Mo. 1975).
The mandatory meaning would best reflect the intention behind the legislature's use of the word "shall" in Section60.010 and would also be consistent with the conclusion this office reached in Opinion No. 48, Kesterson, March 18, 1943 (copy enclosed) in which this office opined that counties were under a mandatory duty to establish a county highway commission pursuant to Sections 8502 through 8513, RSMo 1939.
 If the County Highway Commission Act should be considered as directory, then the various County Courts of the State by not following its provisions could nullify the Act. Another statutory construction which might be applicable here is that the Legislature should not be held to have enacted a meaningless statute. After considering this entire Act we are convinced that the lawmakers have intended that it be mandatory and that its provisions be carried out by the various County Courts. Id. at page 3.
This conclusion is consistent with the fact that the provisions of the Comprehensive Election Act of 1977, which govern the election of county officials, provide that the county has a duty to put a candidate on the ballot as long as he complies with the statutory requirements of becoming a candidate. See, for instance, Section 115.321.5, RSMo 1986 ("The name of each person who files a valid petition for nomination as an independent candidate shall be placed on the official ballot as an independent candidate for the office at the next general election or the special election if the petition nominates a candidate to fill a vacancy which is to be filled at a special election. . . ."); Section 115.333.1, RSMo 1986 ("When any petition [for the formation of a new party or for the nomination of an independent candidate] is filed with the secretary of state or an election authority under the provisions of this subchapter, the secretary of state or the election authority shall determine whether or not it complies with the provisions of this subchapter. . . ."); Section 115.343, RSMo 1986 ("The name of such candidate [winner of party primary] shall be placed on the official ballot at the general election unless he is removed or replaced as provided by law. . . .").
For the county to refuse to hold an election for county surveyor would be tantamount to abolishing the office. This would be contrary to the common law principles applicable to the abolishment of a local elective office.
 In the absence of constitutional restriction, an office created by the legislature can be abolished by it. So, the governmental authority which possesses the power to create an office has the implied power to abolish such office, or to consolidate two or more offices which it has created. . . .
 Where permitted by the constitution, a legislative body may delegate its authority to abolish the position of a civil officer, but this may be done only by an express authorization. It has been held that, where a higher legislative authority, in authorizing a subsidiary authority to create an office, has itself formulated the duties, the manner of election, and the term of office, the subsidiary authority, after creating the office, cannot thereafter abolish it during the term of the incumbent who has been elected to fill it; but there is also authority holding that the subsidiary authority has authority to abolish the office which has been thus created by it.
 The intention of the legislature to abolish an office must be clearly stated.
While it has been said that an office may be abolished by implication by the creation of a new office and the devolution on it of duties of the old office, reorganization of an existing system or department of government does not necessarily require abolition of prevailing offices. Since every public office is the creation of some law, it continues only so long as the law to which it owes its existence remains in force; hence, when such law is authoritatively abrogated the office ceases unless perpetuated by virtue of some other legal provision. [Footnotes omitted.] 67 C.J.S. Officers, Section 14, pp. 249-251.
(Emphasis added.)
There are no statutory or constitutional provisions giving the county the legal authority to abolish the office of county surveyor. Therefore, the county cannot refuse to hold an election simply because there has been no candidate to fill the office for the last several years.
When your question is examined in light of the mandatory language of Section 60.010 and of the Comprehensive Election Act of 1977 and in light of the fact that the county has no authority to in effect abolish the office of county surveyor, the conclusion must be that the county cannot refuse to have an election for county surveyor provided, of course, there is a candidate entitled to be placed on the ballot.
It is the opinion of this office that when there is a candidate who has fulfilled the legal requirements to have his name placed on a special, primary or general election ballot for the office of county surveyor, the election authority must place his name on the ballot and hold the election.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosure:
Opinion No. 48, Kesterson, March 18, 1943